Ronald Abramson
David G. Liston
**LEWIS BAACH pllc**
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 826-7001

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WAG ACQUISITION, L.L.C.**, <br><br>                    Plaintiff, <br><br>     v. <br><br> **SOBONITO INVESTMENTS, LTD., COOLVISION LTD., I.M.L. SLU, and DOES 1-20**, <br><br>                    Defendants. | Civil Action No.:  2:14-cv-01661-ES-JAD <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND JURY TRIAL DEMAND** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff WAG ACQUISITION, L.L.C., for its complaint against Defendants, alleges infringement of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839 (the "patents-in-suit").  Plaintiff alleges that Defendants directly and indirectly infringe the patents-in-suit in their Internet delivery of live adult video web cam performances, as more particularly specified herein.

## THE PARTIES

1. Plaintiff WAG Acquisition, L.L.C. is a New Jersey limited liability company with its principal place of business at 3 Gold Mine Road, Suite 104, Flanders, New Jersey 07836.

2. On information and belief, Defendant Sobonito Investments, Ltd. ("Sobonito") is a corporation organized under the laws of Cyprus with its principal place of business in Cyprus and a business address at 41 East 11th Street, New York, New York 10003.

3. On information and belief, Defendant Coolvision Ltd. ("Coolvision") is a corporation organized under the laws of Israel with its principal place of business at 6 Ha-barzel St., Ramat Hachayal, Tel Aviv, Israel.

4. On information and belief, Defendant I.M.L. SLU ("Imlive") is a company organized under the laws of the Principality of Andorra, with its principal place of business at Edifici Burges, Avinguda Sant Antoni 27, La Massana, AD 400, Principat D'Andorra.

5. On information and belief, Defendants DOE 1 – DOE 20 are entities whose precise identities are unknown to Plaintiff at this time, which operate in concert with the above-named defendants and infringe or induce or contribute to infringement of Plaintiff's patents.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## PLAINTIFF'S DEVELOPMENTS AND BUSINESS

8. Plaintiff, operating under the trade name SurferNETWORK, is in the business of providing Internet broadcasting services for live and on-demand audio and video program material. Plaintiff began this business in 1998, and has been one of the leading providers of such services to the terrestrial radio stations and other content providers that comprise its customer base.

9. Early in developing its business, two of Plaintiff's principals, William A. Grywalski, ("Grywalski") and Harry Emerson ("Emerson"), recognized a need that existed in the field due to the shortcomings in then current Internet streaming technologies. They observed that long startup delays due to "buffering" and frequent program interruptions (sometimes referred to as "jitter") made the experience of trying to listen to or view streaming Internet content frustrating to the end user, and therefore impractical as a content delivery mechanism. They were interested in making the Internet streaming experience more like radio or television, including the immediacy of having the programming appear to start instantly on demand (e.g., turning on a radio or flipping channels), and continue playing once started without random interruptions.

10. Plaintiff engaged the assistance of a software design engineer, Harold Price ("Price"), to develop solutions for the shortcomings they saw in the current technology, with respect to streaming media playback performance, as well as other

technological issues concerning Internet delivery of broadcast media. Price worked on several aspects of this matter for Plaintiff over the period 1999-2001.

11. Price was aware of the then current approach to streaming, which attempted to overcome streaming transmission delays and jitter by a variety of techniques, including, for example, establishing a 20-second or so content buffer on the receiving (user or "client") end of the communication, within the client's media player or media player browser plugin. After the user selected (e.g., clicked on) a stream, the player would start filling this buffer at the playback rate and then start playing when the buffer was full. While this method did provide some protection against interruptions for the duration of whatever content was initially buffered, it entailed an undesirable startup delay for "buffering," and provided no means for graceful recovery once the 20 seconds worth of content in the buffer was used up.

12. Price conceived of solutions to these problems. He built a prototype that implemented one embodiment of those solutions, and demonstrated that a system according to his new design could overcome the problems put to him by Grywalski and Emerson.

13. Plaintiff and its predecessors in interest filed a number of U.S. patent applications on these developments, as enumerated below. To date, this family of patent applications has resulted in seven issued U.S. patents, including the patents-in-suit. All of these patent applications were assigned to Plaintiff, or to a predecessor-in-interest of Plaintiff and reassigned to Plaintiff.

14. Plaintiff has been conducting an active, operating business ever since the developments described above, and has actively practiced under the technology

taught in the patents-in-suit, from then to the present.  Plaintiff has developed commercial arrangements under which it provides the service of streaming content for numerous terrestrial radio stations and content providers in New Jersey, regionally, nationally, and internationally.  It also provides a One-Click Royalty Reporter™ for radio stations to report streaming media performance royalty information to SoundExchange, among other services.

15.  Despite its successes, Plaintiff's business has been damaged by infringement such as that practiced by the Defendants.

**THE PATENTS-IN-SUIT**

16.  United States Patent No. 8,122,141 (the '141 patent") was duly and legally issued on February 21, 2012 for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '141 patent and owns all rights to recover for past infringement thereof.

17.  United States Patent No. 8,327,011 (the '011 patent") was duly and legally issued on December 4, 2012 for an invention entitled "STREAMING MEDIA BUFFERING SYSTEM."  Plaintiff is the owner by assignment of the '011 patent and owns all rights to recover for past infringement thereof.

18.  United States Patent No. 8,185,611 (the '611 patent") was duly and legally issued on May 22, 2012, for an invention entitled "STREAMING MEDIA DELIVERY SYSTEM."  Plaintiff is the owner by assignment of the '611 patent and owns all rights to recover for past infringement thereof.

19.  United States Patent No. 8,364,839 (the '839 patent") was duly and legally issued on January 29, 2013, for an invention entitled "STREAMING MEDIA

DELIVERY SYSTEM." Plaintiff is the owner by assignment of the '839 patent and owns all rights to recover for past infringement thereof.

**DEFENDANTS' ACTIVITIES**

20. Defendants are in the business of providing live adult webcam performances over the Internet. Defendants arrange for numerous individuals to perform in front of video cameras and to feed the streams of these performances to server installations under defendants' ownership or control. The performances are distributed from there, in real time, to Internet viewers around the world, on diverse systems, including without limitation desktop computers, as well as Apple® iOS, Android™, and Blackberry® smartphones and tablets. Defendants provide interactive facilities for users to communicate requests and comments to the performers, and for Defendants to charge the users' credit cards for their use of the system and the tips they give to the performers. Defendants aggressively market these services to a worldwide audience, including a substantial volume of users in this District, from which defendants derive substantial revenues.

21. Adult streaming media is an extremely high volume business, which is well known as consuming a high percentage of the total bandwidth available on the Internet. Operating in this market requires sophisticated technology and complex infrastructure.

22. While the operational demands of the adult streaming business entail high infrastructure cost, the market for Defendants' services is also very large, making the business extremely lucrative.

23.  Success in Defendants' business is highly dependent on fast, smooth, uninterrupted delivery of streaming media content, such as that made possible by Plaintiff's patents.  Defendants derive great value as a result of operating under Plaintiff's patented technology, for which they have not compensated Plaintiff.

24.  On information and belief, Defendants Sobonito and Coolvision are the financial and operational masterminds behind Defendants' infringing operations.  They have recruited a large number of webcam performers in Eastern Europe and elsewhere and assembled Internet distribution, billing, and syndication platforms for their performances, to form a global pornography enterprise that reaches all parts of the world.  On information and belief, Defendants' retinue of live performers include New Jersey residents, who perform online over Defendants' infringing services, from New Jersey, using facilities provided by Defendants.

25.  On information and belief, Defendant Imlive operates the web site Imlive.com, which serves as Defendants' the "flagship" site for streaming webcam performances originating from Defendants' global enterprises.  Imlive streams these performances over a variety of delivery technologies to, inter alia, desktop computers and mobile devices, including without limitation smartphones and tablets operating under the iOS and Android operating systems, in a manner that infringes Plaintiff's patents.

26.  On information and belief, Defendant Imlive also operates the web sites Pussycash.com and Webcamwiz.com, which provide "Affiliate" programs for Defendants.  Under the Affiliate programs, Defendants' Imlive.com and other webcam sites are "white labeled" to other Internet service providers on a revenue

splitting basis.  Under such white labeling, providers of other prominent pornography sites (frequently "tube" sites offering short, low-quality clips on a free basis) provide a paid, revenue-generating webcam adjunct service under the provider's own branding, which will appear to the user as a click-through or pop-under site.  Though branded to look like the provider's tube site, the affiliated webcam site is actually provided by Imlive and/or one of the Defendants named herein.  The affiliate provider and such Defendant will generally split the revenue resulting from the white-labeled site.

27.  On information and belief, defendants DOE 1– DOE 20 are operators of "affiliated" web sites that are cosmetically modified versions of Imlive.com or others of Defendants' webcam sites carrying the DOE defendants' branding.  On information and belief, DOES 1-20 have revenue split deals with the other Defendants named herein, under which they take a substantial share in revenues derived from infringing Plaintiff's patents.

28. Defendants have infringed and are continuing to infringe Plaintiff's patents, including at least the patents-in-suit.  Defendants' servers are configured to stream Defendants' live webcam performances and other video streams over a variety of delivery technologies to, *inter alia*, the smartphones, tablets, browsers and other mobile platforms ("Mobile Platforms"), and desktop cumputers ("Desktop Platforms"), in a manner that infringes Plaintiff's patents.  Defendants employ different techniques to stream video to Mobile Platforms and Desktop Platforms, which techniques infringe Plaintiff's patents in different respects.

## COUNT I: INFRINGEMENT OF THE '141 PATENT

29. Plaintiff repeats and realleges the allegations of paragraphs 1-28 above as if fully set forth at length herein.

30. Defendants have infringed and continue to infringe the '141 patent by providing live streaming performances over the Internet to, *inter alia*, Mobile Platforms, through their manufacture, distribution, use, sale, importation, and/or offer for sale of systems, methods, products, and processes for:

- creating or storing on their servers streaming media from a live source (or from a disk file) in a form comprising a plurality of sequential media data elements, which are identified by serial identifiers,

- programming the servers to receive requests from user systems for media data elements corresponding to serial identifiers specified in the requests,

- programming the servers to send the media data elements responsive to the user requests, with the result that the streaming media contained in the media data elements are sent to the user at a rate more rapid than its playback rate,

- sending software to the user to implement a media player on the user's system for receiving streaming media from Defendants' specially programmed servers, and for playing the streaming media so received,

- programming the media player as sent to the user, to cause it to maintain a record of the identifier of the last data element that has been received,

- programming the media player as sent to the user, to transmit to the server requests to send one or more data elements, specifying the identifier of the data elements, as required by the media player to maintain a sufficient number of media data elements in the media player for uninterrupted playback,

and additionally and alternatively by their contributing to and inducement of others to manufacture, use, sell, import, and/or offer for sale infringing systems, methods, products, and processes in the manners described above.  Defendants are liable for their infringement of the '141 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

31.  Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

32.  Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT II: INFRINGEMENT OF THE '011 PATENT

33.  Plaintiff repeats and realleges the allegations of paragraphs 1-32 above as if fully set forth at length herein.

34.  Defendants have and are continuing to infringe the '011 patent by their manufacture, distribution, use, sale, importation, and/or offer for sale of software components to combine with a user's processor, memory, and network connection, specially adapted to create, *inter alia*, on Mobile Platforms, a media player for the user to interact with Defendants' media servers (which provide streaming media as a series of sequentially identified data elements), the software components comprising:

- instructions to cause the media player to request from the media source a predetermined number of media data elements,

- instructions to cause the media player to receive media data elements sent to the media player by the media source and store the media data elements in the player memory,

- instructions to implement a player buffer manager to maintain a record of the serial number of the last media data element received and stored in a player buffer in the player memory,

- instructions to cause the media player to play the media data elements sequentially from the player buffer,

- instructions to cause the media player to request media data elements from the server by serial number and to repeat such requests so as to maintain a pre-determined number of media data elements in the player buffer,

and additionally and alternatively by their contributing to and inducement of others to manufacture, use, sell, import, and/or offer for sale infringing systems, methods, products, and processes in the manners described above.  Defendants are liable for their infringement of the '011 patent pursuant to 35 U.S.C. §§ 271(a)-(c).

35.  Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

36.  Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

### COUNT III: INFRINGEMENT OF THE '611 PATENT

37. Plaintiff repeats and realleges the allegations of paragraphs 1-36 above as if fully set forth at length herein.

38. Defendants have and continue to directly and indirectly infringe at least at least claims 1-2, 6-7, 8, 10-11 and 14 of the '611 patent, in their manner of providing streaming performances over the Internet. Such infringement occurs as a result of Defendants' streaming of live performance webcam video to Desktop Platforms, in which Defendants perform, use, or provide, without limitation, methods and systems for the following:

- sending initial streaming media elements to the user system at an initial sending rate more rapid than the playback rate, to fill the user buffer, configuring the elements so that the amount of the initial elements and the initial sending rate are sufficient for the user system to begin playing back the streaming media while the user buffer continues to fill, and
- thereafter, sending further streaming media data elements to the user system at about the playback rate, which matches the rate at which the server buffer is filled from the live performance, and where the further streaming data elements are received by the user's computer at about the playback rate if there are no interruptions in the transmission of media data between the server and the user's computer.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '611 patent pursuant to 35 U.S.C. § 271(a)-(c).

39. Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

40. Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

### **COUNT IV: INFRINGEMENT OF THE '839 PATENT**

41.  Plaintiff repeats and realleges the allegations of paragraphs 1-40 above as if fully set forth at length herein.

42.  Defendants have and continue to directly and indirectly infringe at least at least claims 1, 3-5, 7-8, 10-12, 13-14, 15, 17-19, and 21 of the '839 patent, in their manner of providing streaming performances over the Internet.  Such infringement occurs as a result of Defendants' streaming of live performance webcam video to Desktop Platforms, in which Defendants perform, use, or provide, without limitation, methods and systems for the following:

- loading a server buffer with streaming media data elements,
- sending an initial amount of streaming media data elements to the user system at an initial sending rate more rapid than the playback rate, such that the user system can begin playing back the program while the user buffer continues to fill,
- thereafter, sending further streaming media data elements to the user system at about the playback rate and filling the server buffer at about the playback rate, where the further streaming data elements are received by the user's computer at about the playback rate if there are no interruptions in the transmission of media data between the server and the user's computer.

As a consequence of said acts, and variations thereof as recited in the identified claims, all of which are performed or provided by Defendants, Defendants are liable for their infringement of the '839 patent pursuant to 35 U.S.C. § 271(a)-(c).

43.  Defendants' acts of infringement have caused and are continuing to cause damage to Plaintiff, and Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' infringing acts in an amount subject to proof at trial.

44.  Defendants' widespread infringement has injured Plaintiff's ability to expand its operations based on its patented technology.  Plaintiff's remedy in damages for such continuing infringing activity is inadequate to fully compensate Plaintiff for the invasion of its exclusive rights, and Plaintiff is entitled to an injunction to protect its business against such continuing infringement.

## COUNT V: WILLFUL INFRINGEMENT

45.  Plaintiff repeats and realleges the allegations of paragraphs 1-44 above as if fully set forth at length herein.

46.  The filing of this action for infringement constitutes notice to Defendants of such infringement, pursuant to 35 U.S.C. § 287.  At least upon receipt of such notice Defendants should have understood that there was an objectively high likelihood that their actions thereafter constituted patent infringement.

47.  Defendants' continued infringement at least after such notice is willful and deliberate, entitling Plaintiff to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**JURY DEMAND**

48. Plaintiff demands trial by jury on all issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff WAG ACQUISITION, L.L.C. requests an entry of judgment in its favor and against Defendants as follows:

a) Declaration that Defendants have each infringed United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

b) Declaration that each of Defendants' infringement has been willful, and awarding enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284, jointly and severally against the Defendants;

c) Permanently enjoining Defendants, their officers, directors, employees, agents, and all those in concert and participation with them from continued infringement of infringed United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839;

d) Awarding the past and future damages arising out of Defendants' infringement of United States Patent Nos. 8,122,141, 8,327,011, 8,185,611, and 8,364,839 to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof, jointly and severally against the Defendants;

e) Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law, jointly and severally against the Defendants; and

f) For such other costs and further relief as the Court may deem just and proper.

Dated: April 24, 2014

           RONALD ABRAMSON
           DAVID G. LISTON
           LEWIS BAACH PLLC
           The Chrysler Building
           405 Lexington Avenue
           New York, NY 10174


           By: s/ Ronald Abramson
             Ronald Abramson
           Tel: (212) 822-0163


           By: s/ David G. Liston
             David G. Liston
           Tel: (212) 822-0160

           *Attorneys for Plaintiff*