```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

WAG ACQUISITION, L.L.C.,            .
                                    .
         Plaintiff,                 .
                                    .  Case No. 14-cv-02340
vs.                                 .
                                    .  Newark, New Jersey
MULTI MEDIA, LLC, et al.,           .  January 22, 2016
                                    .
         Defendants,                .
                                    .
_____    .

And Consolidated Cases:             .
14-1661, Sobonito Investments       .
Limited, et al.; 14-2340,           .
Multi Media; 14-2345, Data          .
Conversions; 14-2674, Flying        .
Crocodile; 14-2832, Gattyan         .
Group S.a.r.l.; 14-3456,            .
FriendFinder Network Inc.;          .
14-4531, Vubeology; and             .
15-3581, Webpower Inc.,             .
                                    .
         Defendants.                .
_____    .


                    TRANSCRIPT OF HEARING
          BEFORE THE HONORABLE MICHAEL A. HAMMER
               UNITED STATES MAGISTRATE JUDGE

This oral opinion delivered herein has been reviewed and
revised in accordance with L. Civ. R. 52.1


APPEARANCES:

For the Plaintiff:       DAVID G. LISTON, ESQ.
                         Lewis Baach PLLC
                         405 Lexington Avenue
                         32nd Floor
                         New York, NY 10174
                         (212) 822-0160
                         david.liston@lewisbaach.com
```

```
 1
 2                              RONALD ABRAMSON, ESQ.
                               Lewis Baach PLLC
 3                              405 Lexington Avenue
                               32nd Floor
 4                              New York, NY 10174
                               (212) 822-0163
 5                              ronald.abramson@lewisbaach.com

 6                              Also present: Ari J. Jaffess (Lewis
                               Baach PLLC); Alex Patchen (Lewis
 7                              Baach PLLC)

 8
     For the Defendants:       RALPH A. DENGLER, ESQ.
 9                              Venable LLP
                               Rockefeller Center
10                              1270 Avenue of the Americas
                               The Twenty-Fourth Floor
11                              New York, NY 10020
                               (212) 503-0655
12                              Radengler@Venable.com

13                              ANDREW P. MACARTHUR, ESQ.
                               Venable LLP
14                              Rockefeller Center
                               1270 Avenue of the Americas
15                              The Twenty-Fourth Floor
                               New York, NY 10020
16                              (212) 503-0657
                               APMacArthur@Venable.com
17
                               RICHARD V. WELLS, ESQ.
18                              Baker & McKenzie LLP
                               815 Connecticut Avenue, N.W.
19                              Washington, District of Columbia
                               20006
20                              (202) 452-7000

21                              JUSTIN TAYLOR QUINN, ESQ.
                               Robinson Miller LLC
22                              One Newark Center, 19th Floor
                               Newark, NJ 07102
23                              (973) 690-5400
                               jquinn@rwmlegal.com
24

25
```

```
 1

 2                              DAVID W. LONG, ESQ.
                                Kelley Drye & Warren LLP
 3
                                STEPHEN R. FREELAND, ESQ.
 4                              Kelly Drye Warren LLP
                                Washington Harbour, Suite 400
 5                              3050 K Street, NW
                                Washington, D.C. 20007
 6                              (202) 342-8635

 7                              MICHAEL I. INNES, ESQ.
                                Kelly Drye Warren LLP
 8                              One Jefferson Road, 2nd Floor
                                Parsippany, NJ 07054
 9                              (973) 503-5943

10                              BRIAN G. BODINE, ESQ.
                                Lane Powell PC
11                              1420 Fifth Avenue, Suite 4200
                                P.O. Box 91302
12                              Seattle, WA 98111-9402
                                (206) 223-7406
13                              Bodineb@lanepowell.com

14                              DAVID A. WARD, ESQ.
                                Kluger Healey LLC
15                              F23 Vreeland Road, Suite 220
                                Florham Park, NJ 07932
16                              (973) 307-0800
                                dward@klugerhealey.com
17

18
     Audio Operator:
19
     Transcription Service:      KING TRANSCRIPTION SERVICES
20                               3 South Corporate Drive, Suite 203
                                 Riverdale, NJ  07457
21                               (973) 237-6080

22   Proceedings recorded by electronic sound recording (not all
     parties were discernible on the record); transcript produced
23   by transcription service.

24

25
```

```
1                        I N D E X

2

3    Proceeding                                    Page

4      Proceedings                                   5

5      The Court's ruling on jurisdictional discovery,   54
       Sobonito defendants
6
       The Court's ruling on motion to stay discovery    61
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           (Commencement of proceedings at 11:20 A.M.)

2

3           THE COURT:  All right.  We're on the record in WAG

4  Acquisition LLC versus various defendants.  That would be

5  civil numbers -- all of which have been consolidated for

6  discovery purposes, Civil Numbers 14-1661, that's Sobonito

7  Investments Limited, et al.; 14-2340, that's Multi Media;

8  14-2345, that's Data Conversions; 14-2674 is Flying

9  Crocodile; 14-2832 is Gattyan Group S.a.r.l.; 14-3456,

10 FriendFinder Network Inc.; 14-4531, Vubeology; and 15-3581,

11 Webpower Inc.

12          So let me take appearances, please, beginning with

13 plaintiff.

14          MR. ABRAMSON:  Ronald Abramson from the firm of

15 Lewis Baach for plaintiff.  And with me is David Liston from

16 the same firm.

17          THE COURT:  All right.  Anybody else?  Nope.  So

18 let me go around the table.

19          MR. QUINN:  Good morning, Your Honor, Justin Quinn

20 from Robinson Miller.  At counsel table is Ralph Dengler and

21 Andrew MacArthur, both of whom are from Venable on behalf of

22 the FriendFinder Network Inc., Streamray Inc., Multi Media

23 LLC, WMM LLC, and WMM Holdings LLC, and also the most recent

24 filing, which is Webpower.

25          I'm also local counsel for Richard Wells from Baker

|Hearing
|14-cv-02340, January 22, 2016                                                        6

1  McKenzie and for defendants Gattyan Group -- IT services,

2  Luxembourg S.a.r.l., and Duodecad IT Services U.S.A.

3             MR. WELLS:  Good morning, Your Honor.

4             THE COURT:  All right.  Good morning.  Go ahead.

5             MR. INNES:  One more, Your Honor, Michael Innes,

6  David Long, and Steve Freeland of Kelley Drye & Warren on

7  behalf of I.M.L. SLU and Coolvision --

8             MALE SPEAKER:  Good morning, Your Honor.

9             THE COURT:  Good morning, everyone, all right.

10            MR. WARD:  Good morning, Your Honor, David Ward,

11 Kluger Healey on behalf of Flying Crocodile defendants in

12 14-cv-2674 and Vubeology Inc. in 14-cv-4531.  And with me

13 this morning is Brian Bodine from Lane Powell.

14            MR. BODINE:  Good morning, Your Honor.

15            THE COURT:  All right.  Good morning, everyone.

16 And I think that's everybody.  Correct?  Okay, terrific.

17            All right.  So I have reviewed a number of

18 documents.  I read the IPR summary, status report through

19 Judge Salas filed back in November.  I've obviously read the

20 submission from three days ago; the January 19th submission

21 regarding the joint discovery plan; e-discovery order; and

22 502(d) order.  That's Docket Entry 32.

23            This is a series of cases that have been

24 consolidated for discovery purposes only.  Plaintiff asserts

25 a variety of patent infringement claims based on four

 1  Patents-in-Suit.  It's four.  Right?

 2           MR. ABRAMSON:  Four, Your Honor.

 3           THE COURT:  Yeah, right, four.  One of the things

 4  we'll -- we're going to talk about is the number of claims,

 5  because the defendants have raised an issue about that --

 6  that's for down the road -- against the defendants for

 7  various infringement involving streaming and buffering.  All

 8  right.

 9           So if I understand correctly, giving the best sort

10  of general overview, seven of the eight cases -- the cases

11  are not that procedurally far apart in terms of discovery.

12  Seven of the eight cases have been a full exchange of initial

13  disclosures.  One case -- and so you're waiting for now a

14  schedule for the rest of discovery; motions to dismiss on

15  various grounds, including invalidity and other grounds --

16  putting aside the personal jurisdiction, I'm going to come

17  back to that in a moment.  Indefiniteness and various other

18  defenses that were in the defendants' basically joint omnibus

19  motion to dismiss, were denied as to -- at least some of

20  them, including claim -- I'm sorry, invalidity.  The Court

21  determined that it needed to do claim construction first.

22           As to the 14-1661 case, that one is a slightly

23  different posture only because there was a motion to dismiss

24  as to Sobonito, asserting a lack of specific jurisdiction.

25  The Court denied that without prejudice in its

 1  September 10th, 2015, opinion and order, finding it needed

 2  discovery to determine whether jurisdiction was appropriate.

 3          Let me, at least for the plaintiff, have I -- have

 4  I missed anything significant thus far?  I'm just trying to

 5  get a -- make sure I understand where we are up to this

 6  point.

 7          MR. ABRAMSON:  No, Your Honor, I think that's -- I

 8  think that's all correct.  Yes, so I think you summarized it

 9  correctly.

10          THE COURT:  Anybody on the defense side think --

11  take issue with the way I've described it?

12          MR. DENGLER:  The only thing, Your Honor, I think

13  in at least one of the cases, there's only two patents at

14  issue.

15          THE COURT:  Okay.  Which is that -- is that --

16          MR. DENGLER:  That's, at least in the Vubeology

17  case, as I understand it, there are two.

18          THE COURT:  Vubeology, okay.

19          MR. ABRAMSON:  There -- there are -- if you want to

20  be -- go case by case, I mean there are a couple of cases

21  where only two patents are at issue.  Two of the four, so

22  that would be --

23          THE COURT:  Well, actually -- why don't -- why

24  don't you give me that, just so that ...

25          MR. ABRAMSON:  Okay.  So the Sobonito case, which

1    is 1661.

2              THE COURT:  Yeah.

3              MR. ABRAMSON:  Caption here.  The Sobonito case has

4    all four.

5              The Multi Media case has two.

6              THE COURT:  Which two or those?  Would that be '611

7    and '839?

8              MR. ABRAMSON:  No, it's -- no.  The two on Multi

9    Media case are the '141 and the '011.

10             THE COURT:  Okay.  Regarding the "pull

11   implementation" device?

12             MR. ABRAMSON:  Pardon me?  We've already --

13             THE COURT:  To the "pull implementation."

14             MR. ABRAMSON:  Pull implementation, sorry.

15             THE COURT:  Solution.  Right.  Okay.

16             MR. ABRAMSON:  Oh, I didn't hear what you said.

17             WMM case is the same.  It's --

18             THE COURT:  Wait, which one's --

19             MR. ABRAMSON:  2345.

20             THE COURT:  Okay.  And that's '141 and is the '011

21   patents?

22             MR. ABRAMSON:  Correct.

23             THE COURT:  Okay.

24             MR. ABRAMSON:  Flying Crocodile, which is case 2674

25   is all four.

|Hearing
|14-cv-02340, January 22, 2016

1          Gattyan Group is all four.  That's 2832.

2          THE COURT:  Yup.

3          MR. ABRAMSON:  FriendFinder, which is 3456 is all

4    four.

5          Vubeology is just the two "pull" patents.  That's

6    the 4531.

7          And Webpower, last one, 3581 is all four.

8          THE COURT:  Okay.  Okay.  Fair enough.

9          MR. LONG:  Your Honor, if I may, my name is David

10   Long.

11         THE COURT:  Yeah.

12         MR. LONG:  -- represent Coolvision and I.M.L. in

13   the 1661 case.  One quick -- quick clarification is that the

14   motion to dismiss raised on personal jurisdiction was brought

15   by Coolvision because at that time, I.M.L. SLU, and the

16   defendant Sobonito had not been served yet.

17         THE COURT:  Okay.

18         MR. LONG:  We've -- I am -- I now have been served,

19   I think that was back to August, and we agreed to include in

20   the personal jurisdiction discovery, discovery about the

21   personal jurisdiction of I.M.L.  It's my understanding that

22   Sobonito has not been served yet.

23         THE COURT:  Is that plaintiff's understanding?

24         MR. ABRAMSON:  That's correct.

25         Sobonito, we've been unable to locate them.  The

```
 1   record indicates that -- their corporate record in Cyprus
 2   indicates that the company has been in dissolution since
 3   2009.  So it may -- it may no longer exist.  So, you know, at
 4   this point, we've been unable to serve them after -- after
 5   that two efforts.
 6            THE COURT:  Okay.  All right.
 7            All right.  Let's talk about -- as I see it, there
 8   are basically -- there's a couple of different ways you could
 9   look at approaching this.  One is we talk about the cases
10   other than Sobonito and then come back to that.  And when I
11   say Sobonito, you all understand, we're talking about 1661.
12   I understand Sobonito hasn't been served.
13            There's a jurisdictional issue in that case, and
14   then there's the related issue of -- or disagreement between
15   the parties about what happens to civil discovery pending the
16   personal jurisdiction motion.
17            As to the other seven cases, I don't think there's
18   any dispute that discovery goes forward in those cases.  The
19   issue is, one, do you bifurcate liability and damages.  Two,
20   the parties have various differences along the way in terms
21   of some timing and number issues; for example, how do you
22   divide up -- excuse me -- the interrogatories.
23            Is that about right?
24            MR. ABRAMSON:  Well, I think we've actually reached
25   agreement on the latter question.
```

1           THE COURT:  Oh, the interrogatories?

2           MR. ABRAMSON:  Yeah, so I think that -- I think

3    that resolves everything as far as the joint discovery plan

4    is concerned.  Since we -- this morning, we did reach

5    agreement on that.

6           THE COURT:  Other than bi- -- the bifurcation -- so

7    it is a bifurcation issue.

8           MR. ABRAMSON:  Bifurcation would be a motion that

9    has not yet been made, which, we would of course oppose.  But

10   that is -- you know, that's -- that has not been made yet.

11   So as far as the joint discovery plan is concerned, I think

12   it's -- I think it's --

13          THE COURT:  Well, your -- it's defendants' motion.

14          MR. DENGLER:  That's right, Your Honor.  And to the

15   extent Your Honor wants to hear a preview of that now, we can

16   do that.  We agree with what Mr. Abramson said as far as

17   we've reached an agreement on interrogatories, so we can put

18   that on the record or deal with that offline.

19          THE COURT:  Terrific.

20          MR. DENGLER:  And then otherwise, we do agree,

21   Your Honor, that if we proceed with the seven defendants and

22   hash into anything else that's left there, and then come back

23   to the Sobonito defendant.

24          MR. ABRAMSON:  I thought that there was dis- -- you

25   know, let me -- let me, can I -- if I may.

```
 1              THE COURT:  Wait.  Hold on.  I think you were just
 2  saying you agree with -- we still have to have talk about
 3  Sobonito because the plaintiffs are opposing -- the
 4  plaintiffs want to go forward with merits discovery.  Right?
 5              MR. ABRAMSON:  Correct, we do.
 6              THE COURT:  Okay.  We'll come back to that.
 7  That'll be the last thing we address.
 8              So we have agreement on the interrogatories.
 9              We understand that we need the motion to bifurcate,
10  which I'll give you a briefing schedule on now.
11              MR. DENGLER:  And then there's also -- Your Honor,
12  if I may interrupt you, please.
13              THE COURT:  Yeah.
14              MR. DENGLER:  So this is at page 11 of the joint
15  discovery plan.  I think it's the same page on all the
16  dockets.  But in any event, we set forth the defendants'
17  position on what motions we believe need to be made.  And
18  we've spoken briefly about bifurcating discovery, liability
19  and damages discovery.  There are other motions that, again,
20  to the extent Your Honor wishes us to frame those today or
21  else to set a motion schedule --
22              THE COURT:  Well, let's talk about this.  Let's
23  talk about those that need to be brought and those that
24  need -- the 101 challenge doesn't come until after the
25  Markman right?
```

Hearing
|14-cv-02340, January 22, 2016

1              MR. DENGLER:  That's correct, Your Honor.

2              THE COURT:  Okay.  So that's for down the road.

3              MR. DENGLER:  Right.  The motion to limit the

4    asserted claims, Your Honor previewed that.

5              I think, Your Honor, we actually are going to be

6    okay there.

7              THE COURT:  Really?  Good.

8              MR. DENGLER:  We met and conferred yesterday with

9    opposing counsel.  Opposing counsel's indicated that when WAG

10   proffers its infringement contentions, which currently are

11   due in March, that that will -- that will reflect the claim

12   that they're asserting.  In an ideal world, the defendants

13   feel that plaintiff should say right now or shortly after

14   today, these are the claims we want to assert.

15             THE COURT:  Right.

16             MR. DENGLER:  Because then as we -- as we both go

17   down the --

18             THE COURT:  Yeah, you can frame your discovery

19   around it.

20             MR. DENGLER:  Right.  As well as the invalidity

21   contentions, noninfringement contentions and the like.

22             I think what WAG proposed yesterday as far as, hey,

23   when you get our contentions, that's where we're going to be.

24             THE COURT:  Right.

25             MR. DENGLER:  May essentially eliminate the need

1    for motion practice on this.

2              THE COURT:  I'm glad to hear that.  Look, the

3    concern that I have is really not for myself as much as it is

4    for Judge Salas.  You don't need me to tell you that doing a

5    Markman hearing on 70 claims or anything near 70 claims is --

6    well, it's difficult for everybody, but especially the Court.

7    And so you're going to want to keep that in mind with

8    whatever you folks have agreed to.

9              But it sounds like -- well, it sounds like two

10   things.  One, that's not something that we need to fight

11   about today.  And, number two, that's not something that we

12   may not need to fight about ever.  So we can put -- punt on

13   that.

14             MR. DENGLER:  The only potential to not punt right

15   now, Your Honor, and to perhaps get a little more closure on

16   it is, as the Court can appreciate with the need to do prior

17   art searching, prepare invalidity contentions in advance, I

18   mean, right now, there are, in fact, about 70 claims out

19   there.  Perhaps there's a few less because of the IP R and

20   what defendant -- or excuse me, what WAG has indicated that

21   would not be on the table.

22             But the point is we're still up around 60, even

23   taking those off the table from the IPR.

24             So we're -- we all need to go at, you know,

25   invalidity defenses and searching, which is very expensive,

1    very time-consuming --

2              THE COURT:  Sure.

3              MR. DENGLER:  -- with the gamut of these claims.

4    So, you know, this is a little bit of, you know, I've got a

5    secret, let me hide the ball, you'll get my infringement

6    contentions, and then you'll see what I'm asserting.

7              Again, that may be plaintiff's prerogative, but it

8    just seems that it would streamline things, without the need

9    for motion practice to get there, to a, look, two weeks from

10   today, let us know what your asserted claims are.  If that

11   tweaks a little bit when you get the infringement

12   contentions, so be it.  But in the meantime, it gives

13   everyone just that much more of an efficient road map through

14   discovery, which is always the costly and resource-intensive

15   aspect of these cases.

16             MR. ABRAMSON:  Your Honor, I would --

17             THE COURT:  Yeah.

18             MR. ABRAMSON:  -- oppose any acceleration of a --

19   you know, imposing some kind of deadline for us to limit our

20   claims in advance of our infringement contentions.  You know,

21   the patent local rules in this court has a schedule for

22   asserting claims, and that's what we would comply with that.

23   It's going to come in March, which -- you know, relatively

24   soon.  In fact, probably, if we had a motion on it, by the

25   time we got finished briefing the motion and deciding the

1   motion, would be -- would be history.  So, you know, it is

2   a -- a very substantive election that we have to make about

3   which claims.  It has to be done very carefully.  And I think

4   we have -- you know, the local rules prescribes, you know, an

5   adequate schedule for that, which we certainly intend to

6   comply with.

7           MR. DENGLER:  My only counter to that, Your Honor,

8   is Federal Circuit precedent Eastern District of Texas,

9   Northern District of California, all adopt this notion of

10  let's get through to what claims are actually going to be

11  asserted.  Let's do that sooner --

12          THE COURT:  Well, of course.  I mean, I think

13  that's the goal in every patent infringement case.

14          There's two issues, though, and I think -- I think

15  for better or worse, I think Mr. Abramson hit on one of them

16  in particular that I was thinking of is -- look, there's no

17  way, for example, today -- I'm not even sure what the legal

18  basis is to -- for the Court to limit the number of claims or

19  how the Court calculates that -- that number.

20          But -- so -- and I'm not saying there isn't one.

21  I'm just saying I'm not sure that -- of one in particular.

22          So the one point he makes which is fair is,

23  obviously, this would have to be motion practice.  By the

24  time this got resolved, you folks have passed March, I can

25  pretty much promise you, because between the briefing and the

1    Court deciding it, you're probably actually done with serving

2    your infringement and invalidity contentions.  Probably

3    you're proposing terms for claim construction.

4         So I'm concerned about how we approach it.  I'm

5    certainly -- now, on the other hand, the flip side to that,

6    is, as I said before, you know, when you're talking about a

7    substantial number of claims -- and 60 certainly is a

8    substantial number of claims -- the Court has to be

9    considerate of the discovery that that requires, both with

10   respect to invalidity, the number of invalidity contentions,

11   and so it does have a downstream effect that tends to prolong

12   or expand the litigation.

13        So -- so is there a -- I understand, Mr. Abramson

14   opposes any application to limit them now.  And I --

15   certainly in no position to do it today, even assuming that a

16   magistrate judge could, and I don't think it could.  That

17   would really be for the district judge, if anyone.  So we're

18   not going to decide it today.

19        But is there a way to sort of streamline this

20   issue?

21        MR. DENGLER:  Your Honor, what I would suggest --

22   and the short answer's yes.  The infringement contentions

23   currently are due under Rule 3-1 and 3-2 on March 22d,

24   exactly 60 days from today.

25        I don't think it's unreasonable for us to split the

1    baby on this, because, again, defendants -- it makes less

2    work for defendants too, frankly, because to the extent

3    they've done their due diligence and --

4              THE COURT:  I think you mean plaintiff.

5              MR. DENGLER:  Excuse me, I did mean plaintiff,

6    Your Honor.  Excuse me.

7              WAG has brought these lawsuits, you know, in good

8    faith pursuant to their Rule 11 obligations.  So they --

9    they've got an idea, okay, well, this claim is something that

10   we can assert.  This claim, we can assert.  We shouldn't need

11   to assert this claim.  So I mean, they've got that idea out

12   there, and I'm not trying minimize the amount of work they

13   have to do between now and March 22d.

14             THE COURT:  Right.

15             MR. DENGLER:  But it seems eminently reasonable

16   that, look, you'll have less work.  We'll have less work.

17   All the discovery will streamline.  The Court will not have

18   to get a motion to limit the number of claims.  And we think

19   that there's plenty of authority that sways that way.

20             THE COURT:  Judge Salas thanks you.

21             MR. DENGLER:  I think that Judge Salas would,

22   Your Honor.  Thank you.

23             THE COURT:  But what is -- what concretely, what

24   are you proposing?

25        (Simultaneous conversation)

Hearing
14-cv-02340, January 22, 2016

1               MR. DENGLER:  But -- so what I would say, the

2   compromise I would suggest is 30 days from now, Your Honor,

3   if that -- that is not a Friday -- excuse me -- a weekend or

4   a holiday -- that we get their preliminary election of

5   asserted claims.  That's -- that's the road map that's in

6   Texas, that's in Northern District of California.  We do this

7   preliminary election.

8               Again, they could find out in discovery, oh, you

9   know what?  We missed this particular widget.  We need to put

10  that widget or the claim to that widget back in.  We

11  understand that.  Then that would be -- that would be, you

12  know, with leave of the Court to do that.

13              But to ask them that in 30 days, rather than 60

14  days from now, let us know, you know, where are you headed

15  right now, because in 60 days, this is due.  Let us know in

16  30 days where that's going to be, because we're doing our

17  prior art searching and things like for invalidity and such,

18  I think that's a fair compromise, Your Honor.

19              MR. ABRAMSON:  I would say, Your Honor, 30 days

20  really puts it under, I think, unreasonable pressure.  We

21  have --

22              THE COURT:  Let me offer this.  Let me offer this.

23              I can't obviously limit your number of claims.

24              What I can do, if the parties agree -- you know,

25  frankly, even if you didn't, I do have the power, do I not,

1    to relax the time frames under the rules.  The Court always

2    has that power pursuant to its case management authority

3    under Rule 16.

4              Would it help if -- because the defendants'

5    concern, if I understand it, is this.  The defendants'

6    concern is before we have to go off doing -- you know,

7    framing our real discovery and figuring out what claims we're

8    really going to look at and what claims we're really going to

9    challenge on invalidity, we can't be expected to deal with 70

10   claims.  We need some time before we have to do that.  Isn't

11   another way to have at this to give the plaintiff the time

12   that it wants to identify what claims preliminarily it sees

13   as going forward, and relax the time frame so that you're not

14   prejudiced by the fact that he needs a little bit more time

15   to do that.

16             MR. ABRAMSON:  Your Honor, I understand your

17   concern.

18             First of all -- a couple of points.  First of all,

19   the -- as far as the number of claims -- and we've already

20   indicated that the claims that are currently in the IPR,

21   we're not asserting those claims, so, you know, it's in the

22   neighborhood of 60 claims.

23             THE COURT:  That's still a lot of claims, though,

24   right, Mr. Abramson?

25             MR. ABRAMSON:  Well, for -- well, there's a point I

1    want to make.

2          For every claim, there's actually three -- three

3    different variations: a method, a system, and recorded

4    software.   And they're substantiate- -- they're substantially

5    the same.   So, you know, in substance we're really talking

6    about -- about 20 claims here, some of which -- some of

7    which, I guarantee you, will not be asserted.   I don't think

8    that this is going to be an issue, as we go down the line.

9          But, you know, when we make these decisions, we are

10   making an election where we're basically giving up, you know,

11   substantive rights.   We want to do that very carefully.

12          THE COURT:   Sure.

13          MR. ABRAMSON:   And so be forced to do that, you

14   know, on -- on a fast schedule is prejudicial to us.

15          I don't think -- you know, I think wait and see.

16   This will not be an issue.   I don't think this will be an

17   issue as we go forward.   If they want some indication prior

18   to the deadline for the -- for the infringement contentions

19   and which claims we're asserting, we can probably do that,

20   you know, about two weeks before that deadline, give them a

21   heads-up as to -- as to which claims are, you know, in the

22   group and which claims aren't.

23          And, you know, we would offer to do that, and maybe

24   that will address their -- their concern.

25          30 days, I think, is -- is really putting us under

|Hearing
|14-cv-02340, January 22, 2016

1    a lot of pressure.  I think we need a little bit longer than

2    that.

3              MR. DENGLER:  And, Your Honor, we appreciate

4    plaintiff's suggestion.  But I think what Your Honor was

5    indicating would probably be more reasonable and feasible,

6    and that is --

7              THE COURT:  Well, actually to me, they seem -- they

8    seem eminently reconcilable, because if he wants until

9    March 8th -- if plaintiff wants to until March 8th to do

10   that, why can't I simply move the dates -- the March 22d date

11   and the other dates back, say, two weeks after that or six

12   weeks after that.

13             MR. ABRAMSON:  Your Honor, because the wording of

14   those infringement contentions require -- requires quite a

15   bit more work to put the actual language down for those

16   infringement contentions we're going to have to live with in

17   this case.  We have agreed on a schedule.

18             Now, you know, we came into court, both sides

19   agreeing on a schedule for March 22, and I indicated a

20   willingness to give them a heads-up as to which claims we

21   would be asserting, say, by March 8th.  But now to --

22             THE COURT:  But what's the prejudice to you?

23             MR. ABRAMSON:  To write infringement contentions?

24             THE COURT:  No, no, if --

25             MR. ABRAMSON:  Maybe I misunderstood Your Honor's

1    suggestion.

2         THE COURT:  They want to essentially know in

3    advance which claims you're going to -- which claims you're

4    going to focus on.  Right?

5         MR. ABRAMSON:  Yes.

6         THE COURT:  Okay.  And so what you propose to do --

7    and if I understand correctly from the defense side, what

8    you're saying is before -- we need more time than we're

9    getting from March 22d to May 9th to serve our invalidity

10   contentions to know which claims we're really focusing on?

11        MR. DENGLER:  That's correct, Your Honor, in the

12   absence of these are the claims that we're asserting.

13        THE COURT:  Right.

14        MR. DENGLER:  Right now we have all 60, so the

15   relaxation idea that Your Honor's --

16        THE COURT:  Right.  So my point is -- and even if

17   you wanted to keep the March 22d date, the point is to give

18   them a little more time between -- and I'm looking at page 4

19   of the proposed discovery schedule -- between Items Number 3

20   and 5.

21        MR. ABRAMSON:  Right.  I think we're on the same

22   page then because we were -- we were propose- -- service of

23   invalidity contentions, we were proposing to inform them of

24   which claims we are asserting by March 8th.

25        MR. DENGLER:  And based on the current discussion,

 1    Your Honor, I mean, if we are going with the relaxation

 2    theme, push -- push the May 9th date for the --

 3            THE COURT:  What I'm saying is I would propose to

 4    push those back 30 days for both sides.  So I'm not sure that

 5    I understand what the plaintiff is -- how the plaintiff is

 6    prejudiced.

 7            MR. DENGLER:  Because that -- we would be amenable

 8    to pushing -- pushing these 30 or 60 days, Your Honor.  That

 9    would be fine.

10            MR. ABRAMSON:

11            THE COURT:  I like you how you slipped, or 60

12    days --

13                        (Laughter)

14            MR. ABRAMSON:  Your Honor, I --

15            THE COURT:  That was smooth.

16            MR. ABRAMSON:  Your Honor, I must confess, you

17    know, I want to be clear on what -- what exact dates you're

18    proposing here.

19            THE COURT:  Sure.  So Number 3 would stay as

20    March 22d.

21            Thereafter, those subsequent dates would be pushed

22    back 30 days.

23            MR. ABRAMSON:  Okay.

24            THE COURT:  So you're not serving your -- you're

25    not serving your infringement contention, the asserted claims

 1   any earlier than you had already agreed to.  All I've done is

 2   push back the date for the invalidity contentions and by

 3   association, the known infringement contentions.

 4           MR. ABRAMSON:  I mean what else -- is there

 5   anything else that has to -- I understand that.

 6           THE COURT:  Yeah.

 7           MR. ABRAMSON:  And we have no objection to that,

 8   Your Honor.

 9           THE COURT:  Yeah.

10           MR. ABRAMSON:  No objection at all.

11           The only question is what other dates -- you know,

12   does that impact any further -- any dates --

13           THE COURT:  Well, I would -- just to keep it clean

14   and predictable -- I would push back literally everything

15   from 4 through -- although we get to -- once we get to

16   Markman it's almost -- it moots itself out -- but the

17   remaining schedule back 30 days.

18           MR. ABRAMSON:  That's fine with us, Your Honor.

19           THE COURT:  Okay.  Good, good, good.

20           MR. DENGLER:  Do, as well, Your Honor.  Thanks.

21           THE COURT:  Okay.  Good.  So we resolved that.

22           Okay.  And there's no issues as to the e-discovery

23   order.  Right?

24           MR. ABRAMSON:  That's correct.

25           MR. DENGLER:  No, Your Honor, we worked that all

```
 1   out.  Thank you.

 2              THE COURT:  Well done, counsel.

 3              I assume you're going to give me -- at some point,

 4   if you haven't, you must have already, because I know I'm not

 5   the newest -- the first judge in this case -- a discovery

 6   confidentiality order?

 7              MR. ABRAMSON:  No, we -- that is scheduled for

 8   February 8th.  We have discussed it.  We have some issues

 9   remaining there to be worked out.

10              THE COURT:  Okay.  Fine.  I'll -- I will not

11   interfere with that, but the e-discovery order, can I enter

12   now?

13              MR. ABRAMSON:  Yes.

14              THE COURT:  Okay.  All right.  Terrific.

15              I've reviewed and it is acceptable to the Court.

16   Okay.

17              MR. DENGLER:  You should also have the 502(d),

18   Your Honor.  That's been agreed upon, both sides.

19              THE COURT:  Yeah.

20              MR. DENGLER:  That's good to go.

21              THE COURT:  I want to take more -- look at that and

22   just make sure that I'm comfortable with it.

23              But at least, if my understanding is correct, the

24   502(d) order is going to -- no, wait a second.  I'm looking

25   at this.  Let me take a further look at the 502(d) order.
```

```
 1   All you're basically saying, though, is is that you're

 2   quoting the language of 502(d) and agreeing to be bound to it

 3   in the sense that if you -- if there's a review here that

 4   includes the production of material to avert an otherwise

 5   protracted attorney-client privilege fight, you're not

 6   waiving that privilege in this or in any other litigation.

 7   Right?

 8            MR. ABRAMSON:  That's correct.  It's -- it's an

 9   inadvertent privilege.

10            THE COURT:  Yeah.

11            MR. ABRAMSON:   Inadvertent disclosure --

12            MR. DENGLER:   Provision.

13            THE COURT:  But it's solely inadvertent.  In other

14   words, because -- we've used -- this Court's used 502(d) in

15   other ways, which is as an alternative to a particularly

16   protracted attorney-client privilege fight.  This just goes

17   to an inadvertent production issue.

18            MR. ABRAMSON:  Correct.

19            THE COURT:  Okay.  Let me take one more quick look

20   at that.

21       (Pause in proceedings)

22            THE COURT:  All right.

23            MR. ABRAMSON:  Your Honor, to be accurate, I don't

24   think it's literally limited to inadvertent production.

25            THE COURT:  No, you are right.
```

1          MR. ABRAMSON:  It's not.

2          THE COURT:  No.  To the contrary, actually, it --

3  paragraph (B) says the greatest protection allowed by 502(d).

4          Okay.  I'm not going to quibble with that because

5  that could obviously spare the parties a lot of otherwise

6  costly litigation later about inadvertent production.

7          Keep in mind, as you negotiate the protective

8  order, the clawback language of that may need to be tailored

9  in some respect to be consonant with the 502(d) order.  Okay?

10  I'm sure you've already thought of that.

11          All right.  Putting Sobonito aside, what else then

12  do we need to iron out on -- oh, you need a briefing schedule

13  on the bifurcation issue.

14          So can the defense get their motion to bifurcate to

15  me by February 26th?

16          MR. DENGLER:  Yes, Your Honor.  And if I may

17  digress partially, one other motion that may be worth raising

18  now and perhaps rolling into that same schedule on

19  bifurcating discovery, pertains to the determining the

20  priority date or stipulating to the priority date of the

21  asserted claims.  This is framed on the bottom of page 11 --

22          THE COURT:  11, yeah.

23          MR. DENGLER:  So very quickly, Your Honor, in a

24  nutshell there and this is -- this is very much a corollary

25  to eliminating the number of claims, because if -- you know,

1   if on the one hand the priority date is September 2000, which

2   is when the provisional application from which the four

3   patents ensued, claimed priority, is, in fact, the priority

4   date, then obviously we're looking at prior art before

5   September 2000.  We don't believe that that's the case for

6   all the claims in the four patents.  And we're talking 60

7   claims, again, another reason why limiting them makes sense.

8            But the point here, Your Honor, and Mr. Long is

9   going to -- has more knowledge this, I'll let him speak, but

10  that should be dovetailed in, we believe, to the scheduling.

11           But Mr. Long --

12           THE COURT:  All right.

13           Mr. Long, let me hear from you, and then I'll be

14  happy to hear from Mr. Abramson on this.

15           MR. LONG:  Thank you, Your Honor.  I brought

16  pictures with me, if you'd like that to have a copy --

17           THE COURT:  Does the plaintiff have a copy?

18           MR. LONG:  They're just about to.

19           THE COURT:  All right.  Yeah, hand them -- if you

20  don't mind, hand them out, and I'll be happy -- I'm always a

21  big fan of visual aids.

22           MR. LONG:  And what this handout is that I've

23  handed up is kind of a diagram of the patent family -- the

24  red highlighted blocks are the patents that are being

25  asserted in this case.

1          And I'm not sure how familiar Your Honor or when

2     the last time you did a patent case, but generally, you file

3     an original patent application, such as this provisional

4     application, at the very top, it says it was filed

5     September 12th, 2000.

6          You can then file another application from that.

7     There is all kinds of those.  The classic kind you can file

8     is called continuing application.  For example, you can see

9     the patent at issue that's the -- for the last three

10    numbers --

11              THE COURT:  Right.

12              MR. LONG:  -- patent is a continuation or at least

13    it's claimed to be a continuation of the first-filed patent.

14          And if you look further down, you'll see the '358

15    Patent was claimed to be a continuation-in-part of the --

16              THE COURT:  That's the IP.  Okay.

17              MR. LONG:  Yes, Your Honor.  Now, there's a

18    significant difference between a continuation and a

19    continuation-in-part.  A continuation-in-part -- a pure

20    continuation application, can I say, is supposed to have the

21    same exact disclosure, say the same exact thing as the patent

22    is supposed to be it's supposed to be a continuation from.

23    So when you see a --

24              THE COURT:  What does it mean to say it's a

25    continuation?

|Hearing
|14-cv-02340, January 22, 2016

1           MR. LONG:  What I mean is it's --

2           THE COURT:  Is it an extension of?  It's related to

3    it somehow?

4           MR. LONG:  Yes, Your Honor.  The -- and there's a

5    whole bunch of law behind it, but the gist of it is you file

6    a patent application and disclose what you -- things you've

7    done, you may have invented.  You then file what are called

8    patent claims at the end of the patent that try to claim some

9    of what you disclose.  And you do that back and forth with

10   the Patent Office, but -- then agree or disagree with what

11   you can get claims issued on.

12          And then they'll say, okay, we'll issue this as a

13   patent.

14          But before that patent issues, you can file a

15   continuing application, which is a way that allows the patent

16   owner to try to seek more claims from that same application.

17   And so it's called a continuing application.  It's -- at the

18   same time that the original application is pending, then you

19   can claim the benefit of that earlier filing date of the

20   original patent, what we sometimes call the "parent

21   patent" --

22          THE COURT:  So -- so for the '398 Patent, for

23   example, they can claim the benefit of the first patent?  Or

24   the '376 Patent?

25          MR. LONG:  Yes, Your Honor, the '376 Patent.  I

1     believe it also trying to claim the benefit of the earlier --

2              THE COURT:  Okay.

3              MR. LONG:  -- provision --

4              THE COURT:  Okay.

5              MR. LONG:  Yes, Your Honor.

6              Now, sometimes, when patent owners file a new

7     application, they got some new ideas.  So they add that to

8     the original application, what we call "new matter."  They

9     add that.

10             And when they do that and file that application,

11    they call it continuation-in-part.  It means it's continuing

12    some of that original disclosure.

13             THE COURT:  But it's somehow expanding on that or

14    making it better.

15             MR. LONG:  Yes, Your Honor.

16             THE COURT:  Okay.

17             MR. LONG:  Now, if that patent, say, the '358

18    Patent, if it had a claim that would allow that -- that

19    relied solely on that new matter, the new stuff that was

20    added and that was filed in 2004, that's its priority date.

21    Priority date is important because that means anything that's

22    occurred prior to that date would be prior art.

23             So, for example, your prior art search, if you're

24    look - -- you want to see prior art for the '358 Patent --

25             THE COURT:  I got you.  It would be July -- pre

1    July 2004.

2           MR. LONG:  Right.  But if it was relied on what was

3    disclosed in the earlier application, then the prior art date

4    gets pushed back.

5           THE COURT:  Okay.

6           MR. LONG:  And so when you look at this diagram,

7    when the patents are filed, only one of them did they

8    officially claim was the CIP, meaning continuation-in-part,

9    meaning that it had new matter.

10          The other -- where you've seen we've drawn an arrow

11   here?  That just means they represented that it was a

12   continuing application, meaning nothing was different.

13          Now, when we actually looked and did a comparison

14   of what's disclosed in the, for example, Patents-in-Suit with

15   some of the earlier-filed patents, we saw that, well,

16   actually they're different.  If you do a red-lined

17   comparison, you see words that are in one that are aren't in

18   the other.  So even though it was called a continuation, it

19   may not be.  It may be a continuation-in-part.

20          So what that means is let's take, for example, the

21   '839 Patent in the lower right-hand corner.

22          THE COURT:  Yes.

23          MR. LONG:  This is 21 claims in that patent.  I

24   think some of them, WAG has they're not going to be -- now,

25   every patent claim -- for that claim independently to

1    determine what is its priority date.  So one claim in the

2    patent may have a priority date of 2000, because it was

3    disclosed all the way through that chain back to the original

4    provision.

5              THE COURT:  Okay.

6              MR. LONG:  Other claims may rely on what we call

7    "new matter" somewhere in the chain, so its priority date

8    would be different.

9              And so, as you can imagine, with one patent with

10   multiple claims that can have multiple priority dates, the

11   amount of work and prior art you have to look at multiplies.

12             And because, as we look through this, just doing a

13   simple comparison, for example, just -- compare red-lines,

14   one patent to the other, there's a lot of differences.  So

15   for every patent claim in the '839 Patent, they could have a

16   priority date that might be 2012, it might be 2010, it might

17   be 2004, it might be 2001, it might be 2000.  So for every

18   patent claim, we have to perhaps five potential priority

19   dates.  That means five separate batches of prior art that

20   we've got to look for, spend the money on, and try to do

21   analyses of.

22             THE COURT:  Could we just go back -- a little bit?

23             MR. LONG:  Yes, Your Honor.

24             THE COURT:  Can you -- and this is -- I know at the

25   moment, I'm displaying a breath-taking ignorance of PTO

1    procedure, but how is it -- so each claim itself, not just

2    the patent, but each claim can have multiple priority art

3    dates [*sic*] -- or multiple prior art dates [*sic*].

4           MR. LONG:  Yes, Your Honor.  Imagine the parent of

5    the -- imagine the '611 Patent, for example, disclosed A,

6    okay, whatever A is.

7           THE COURT:  Right.

8           MR. LONG:  And then the '839 Patent disclosed A and

9    B.  B's something new.  You could have one claim that says I

10   claim A.  So it could go all the way back to the '611 Patent.

11          THE COURT:  Okay.

12          MR. LONG:  But another claim in the '839 Patent

13   say, I claim B, or I claim A plus B.

14          THE COURT:  Which would go back to the '839 Patent.

15          MR. LONG:  -- only be -- the '839 Patent's filing

16   date, yes, Your Honor.

17          THE COURT:  Okay.

18          MR. LONG:  So it's determined on a claim-by-claim

19   basis.  You have five potential priority dates.  That means

20   five different batches of prior art you have to look for and

21   analyze --

22          THE COURT:

23          MR. LONG:  -- for every single claim -- so as you

24   can imagine, not only do we need to bring down the number of

25   claims early, we also need to know what does the plaintiff

 1   claim would be the priority date for each claim.

 2        The way we do that -- part of the issue for us is

 3   we'd have to show a negative.  And here's what I mean.

 4        Let's say that their patent -- a claim in the '839,

 5   I claim B, and we look and we don't see B in the '611 -- we

 6   look at it, or the '372 or in the '376 or the '358 or any of

 7   these others.

 8        So when we look at it, in our view, we -- B's not

 9   disclosed.  So that claim -- the '839 Patent -- have a

10   priority date of 2012.

11        So all we can say is we don't know where it's at.

12        Now, what's very common in patent cases is we'll

13   serve an interrogatory that says tell us where in your

14   current patent and all the parent patents that you think a

15   claim is entitled to claim priority, tell us where that's

16   disclosed.  Tell us the column and the line number where B is

17   disclosed at.  Right?

18        And then we can look at that and evaluate it and

19   say, well, you know what?  You're right.  I guess we missed

20   it.  Or you're going to say, no, that's not really disclosing

21   it.

22        That -- an interrogatory's very key particularly

23   and particularly key in this case, because it'll help us

24   whittle down having to look at five separate priority dates

25   for every claim that's asserted to one or maybe two, if the

1   parties are disputing -- so that's why we have this

2   originally phrased as a motion to try and have the Court

3   determine that.

4           We conferred with WAG yesterday on the issue.  Our

5   thought is if we can do this with a contention interrogatory,

6   just one common interrogatory that asks them to identify

7   where in the patent and where in the parent, what we call an

8   applications, something is disclosed, then that'll give us

9   what we need to help focus our efforts on what prior art can

10  be looked at and what is the prior art date for each claim.

11          And we need it to be a genuine response to the

12  interrogatory.  Sometimes people play games.  I don't know if

13  WAG's counsel will.  Hopefully not, but we need them to say

14  that if we identified this claim term, where it found in your

15  patent in the parent application, we need column 5, lines 3

16  through 12.  If we have that, we can avoid motion practice,

17  and it helps us whittle down a lot -- for the very reason we

18  need to push back doing our invalidity contentions anyhow,

19  just because of the sheer number of the claims.

20          THE COURT:  Okay.  Okay.

21          Mr. Abramson.

22          MR. ABRAMSON:  Yeah, I mean, what Mr. Long

23  described in terms of -- I think he's done a pretty good job

24  of diagramming this patent family.  It's fairly standard,

25  it's fair normal in patent cases to have -- to have priority

1    chains.

2          And, you know, the answer -- the answer to this

3    question comes from the documents themselves.  So it -- I

4    think it is fair game, as Mr. Long says, for a contention

5    interrogatory.  So I don't understand why this is an issue

6    for the Court.

7          THE COURT:  It sounds like -- it sounds like -- I

8    think that's a great approach.  I'm not sure, frankly -- the

9    concern I have, after you described the process, is the

10   amount of fact finding the Court would have to do to, itself,

11   determine the priority date.  I'm sure courts have done it.

12   But it sounds to me that this is something that could be

13   largely resolved or at least investigated during discovery.

14   If you want to do a contention interrogatory or contention

15   interrogatories to do that -- I don't know if it's really a

16   contention interrogatory.  But the interrogatories in the

17   nature that you were talking about that ask them to identify

18   specifically where does it find itself in the claim, I don't

19   see anything objectionable about that.

20          MR. LONG:  Yes, Your Honor, and what -- I think

21   what we had proposed as a resolution is we serve one common

22   interrogatory, meaning common to all the defendants, that

23   asks that question to the plaintiff.  I think we would

24   identify -- and I think we can do that within a week -- claim

25   terms we believe aren't disclosed either in the current

1    patent or its parent and ask plaintiff to come back with a --

2    we'd want to make sure that we got genuine response on the

3    line numbers.  And I believe we would prefer to get that on

4    an expedited basis; rather than 30 days, 14 days.

5           MR. ABRAMSON:  Your Honor.

6           MR. LONG:  Again, a problem that's substantially

7    cuts down what we have to do and what prior art we need to

8    look for.

9           MR. ABRAMSON:  Your Honor, again, they're asking

10   for, you know, to have accelerated responses.  They have --

11   they can serve contention interrogatories.  We're in

12   discovery -- they can serve interrogatories during the

13   discovery period.  Whether that's one interrogatory is going

14   to depend upon -- upon how -- is we have four patents.

15   Whether that's going to count as one interrogatory, I'm not

16   sure I'm ready to agree -- to agree that that would be the

17   case.

18          And I think, you know, the rules provide that we

19   get 30 days to respond.  And I think that that's -- you know,

20   given everything else that's going on in this case, that

21   would be included in the IP R, which we have a brief due next

22   week.  I believe that 30 days is reasonable.

23          THE COURT:  Let me -- let me parse this out,

24   because there's a couple of different things here.

25          One, I'm not -- I'm going to allow -- to some

1    extent, the debate over timing is going to be somewhat

2    mooted, because we're going to set a discovery schedule, and

3    the interrogatory -- the written discovery's going to be

4    served -- or the deadline to start serving is going to be

5    coming up pretty quickly anyway.

6           I'm not going to require, though, the -- or shorten

7    the time frame for the plaintiffs to respond.  I certainly

8    appreciate Mr. Long's argument that the sooner, the better.

9    But given it sounds to me like the amount of work involved,

10   the particularity that the defense understandably wants,

11   asking them to do that sooner is pretty unrealistic and

12   unreasonable.

13          In terms of the number of interrogatories, this is

14   a perfect time to segue to a little discussion about how

15   we're going to address discovery disputes, one that some of

16   you -- certainly Mr. Quinn has probably heard more times than

17   he cares to admit.

18          So this is the exact sort of issue for which I

19   expect the parties to meet and confer.  I can tell you

20   there's a lot of different ways of slicing the onion.  If the

21   parties can -- depending what the parties will agree to or

22   not -- one is it's one common interrogatory.  Two, it counts

23   as to each party.  If somebody wants to come back later and

24   make a pitch to me for an expanded number of interrogatories,

25   we can certainly discuss that at the appropriate time.

 1            But in the first instance, you folks need to sit

 2    down and flesh this out.  Obviously, you folks know patent

 3    litigation and the demands of patent litigation better than I

 4    ever will.  And you have a reasonable idea of what the other

 5    side needs and what you need.  These are things that, you

 6    know, lawyers in nonpatent cases work out every day.  And

 7    given the quality of the lawyers here, I would expect you to

 8    at least be able to have a meaningful discussion to try to

 9    resolve it.

10            If you can't resolve this or any other dispute

11    regarding written discovery, then after meeting and

12    conferring in good faith, then you will let me know by way of

13    a joint letter.  This is going to be set forth in paragraph 5

14    of the Court's scheduling order.  But the joint letter will

15    tell me or in the joint letter, the party requesting

16    discovery will tell me as succinctly as possible what they're

17    looking for and why and be as specific as possible, though

18    generally with patent lawyers, that is not an issue.

19            And then the party objecting will tell me what it

20    is they find objectionable.  Very often, it's not the

21    entirety of the request that's objectionable.  It's usually a

22    question of degree.  But explain to me as specifically as

23    possible, what part of that discovery request are you

24    objecting to and why.  And we will, depending on timing,

25    either address it at the next regularly scheduled conference,

1    or we'll set up a telephone conference or an in-person

2    conference to address that in advance of the next conference.

3              Look, it sounds to me that at a minimum, the

4    discovery approach -- and Mr. Abramson obviously agrees -- is

5    far preferable here and should be able to resolve this as

6    opposed to the motion approach, which would be far more

7    cumbersome and perhaps uncertain and could very well find the

8    parties -- or a decision that says from the Court, I don't

9    know, get more discovery and then come back.

10             How you folks approach that is at least in the

11   first instance, something that you need to work out.  And

12   keep in mind too, in the grand scheme of this case, that may

13   involve some effort, no doubt, but in the scheme of this

14   case, it's probably going to be pretty small.

15             So in terms of the amount of effort relative to the

16   other discovery in this case.

17             But you need to, at least in the first instance,

18   try to resolve that.

19             I'm not going to change the parties' agreement on

20   the interrogatories, certainly not at this point.

21             Okay.  So that's that, which leaves among -- hold

22   on -- among the -- make sure I'm on the same page as

23   everybody else.  Other than the motion to bifurcate, then,

24   that should take care of the anticipated short-term -- well,

25   they may move for a renewed for alternate services to

1    Sobonito, the plaintiff might.  But other than that, the only

2    other motion that's out there really is the motion to

3    bifurcate.  Right?

4          MR. DENGLER:  Correct, Your Honor, yes, and we need

5    the schedule for that.

6          THE COURT:  Is that correct by you?

7          MR. ABRAMSON:  Correct.

8          THE COURT:  -- as you see it, Mr. Abramson?

9          MR. ABRAMSON:  Correct, yes.

10         THE COURT:  Mr. Long?

11         MR. LONG:  Other than the Sobonito and the personal

12   jurisdictional issue.

13         THE COURT:  Yeah, no, we're coming back to that.

14         MR. LONG:  Yes, Your Honor.

15         THE COURT:  Okay.  All right.

16         So let's just talk briefing schedule for that.

17         MR. DENGLER:  Yes, Your Honor, and, again, against

18   the backdrop of, you know, court resources and keeping things

19   efficient for both sides, perhaps, whether one calls this

20   expedited or not, maybe we could take a look at opening

21   brief, due on February 5th, because that's two weeks from

22   today.  Super Bowl weekend.

23         THE COURT:  If -- make sure -- like -- I can tell

24   you, using the normal court's motion cycle under Local Civil

25   Rule 78.1 -- and I gather your associates may be happy to

```
 1    hear this, February 11th would be the filing deadline.

 2              MR. ABRAMSON:  I'm sorry?

 3              THE COURT:  The filing deadline for his motion

 4    papers, for moving papers would be February 11th.

 5              MR. ABRAMSON:  February 11th.

 6              THE COURT:  Yeah.

 7              MR. DENGLER:  Thank Your Honor.

 8              THE COURT:  Yup.  Opposition would be February 22d.

 9              Reply, February 29th.

10              Returnable, March 7th.

11              MR. DENGLER:  Thank Your Honor.

12              The one item we'd ask for relative to that, if we

13    may, Your Honor, is given the nature of what's going to be in

14    that brief, if we can ask that the -- that damages-related

15    discovery, whether it's interrogatories and so forth, just be

16    held in abeyance while --

17              THE COURT:  Yeah, that's what you're asking for in

18    the motion.

19              MR. DENGLER:  Yes, Your Honor.

20              THE COURT:  Right.

21              MR. DENGLER:  And if we can -- I guess, ask that in

22    advance insofar as, as soon as we're done here and we get

23    Your Honor's discovery schedule, you know, hypothetically,

24    the parties are going to be able to serve interrogatories,

25    contention interrogatories, 30(b)(6) notices, et cetera.
```

Hearing
14-cv-02340, January 22, 2016

```
 1              But what I'm asking for is just in the interim, I
 2   don't think this is -- I don't think damages discovery is
 3   foremost on their mind right now.  So --
 4              THE COURT:  Well, I'm not going to require the
 5   production of damages discovery while whether damages
 6   discovery should go forward is pending, if that's what your
 7   concern is.
 8              MR. DENGLER:  That's the concern, Your Honor.
 9              MR. ABRAMSON:  We --
10              THE COURT:  Right.
11              MR. ABRAMSON:  -- but that's what we would
12   envision, Your Honor.
13              THE COURT:  Fair enough.  Fair enough.  All right.
14   So we're all on the same page.
15              MR. ABRAMSON:  We have other discovery that we can
16   pursue in the meanwhile.
17              THE COURT:  Right.
18              MR. ABRAMSON:  But that without prejudice,
19   obviously, to opposing this motion, which we vigorously
20   oppose.
21              THE COURT:  Of course.  I'm sure.  All right.
22              Is that it for those seven cases, and we move on to
23   Sobonito?  Or are there any other outstanding issues as to
24   those seven?
25              MR. DENGLER:  I believe that's it, Your Honor.  As
```

1  we said, we worked out the interrogatory dispute.

2         THE COURT:  Yeah, I'm going to need -- look, you

3  folks are going to do, in light of that, I'm going to ask you

4  folks to do a proposed discovery order that incorporates the

5  modified dates, your agreement on the written discovery -- or

6  the interrogatories.

7         Have you folks served Rule 26 disclosures yet?

8         MR. ABRAMSON:  Yes, we have in the seven cases.

9         THE COURT:  The other one -- the exception being

10  Sobonito.

11         MR. ABRAMSON:  We -- our side served them in that

12  case.

13         THE COURT:  You haven't gotten a response -- or

14  you -- they haven't gotten --

15     (Simultaneous conversation)

16         THE COURT:  -- we're going to take that up next.

17         Look, the way -- the way this is going to break

18  down is the reason why I figured we get the seven done first

19  and then we deal with Sobonito and either Sobonito gets

20  folded into this existing schedule or the defense prevails

21  and it doesn't.  So that's where we're going to back-end all

22  things Sobonito.

23         Have you folks -- you folks have not served written

24  discovery requests yet.  Right?

25         MR. ABRAMSON:  In the Sobonito case, we have served

 1   jurisdictional discovery requests, but not --

 2              THE COURT:  Right.

 3              MR. ABRAMSON:  -- otherwise.  That's correct.

 4              THE COURT:  Okay.  So let's say, then, by

 5   February 10th, you folks will serve written discovery

 6   requests?  All right?  If that can be incorporated into the

 7   order.

 8              The remaining days in the proposed schedule,

 9   subject to the additional 30 days for Items 4 on, are fine.

10              I think we can move over to Sobonito.  Right?

11              MR. ABRAMSON:  Yes, we can.

12              MR. DENGLER:  Thank Your Honor.

13              THE COURT:  Mr. Long.  Okay.  So let me put the

14   issue right on the table.  Are we missing something?

15              No, I'm sorry.  If we're -- if I'm missing

16   something, I'd rather deal with it now.

17              MR. ABRAMSON:  No, Your Honor, we're good.

18              THE COURT:  Okay.

19              MR. ABRAMSON:  I would like to address actually

20   Sobonito to begin with that.

21              THE COURT:  Hold on.  Hold on.  I -- here's my

22   question.

23              Whether the case is here or it's in another

24   jurisdiction, it's going to presumably go forward.  I doubt

25   Mr. Abramson's client WAG going to stand down because it ends

|Hearing
|14-cv-02340, January 22, 2016

 1    up being in another jurisdiction.

 2            What's the downside to doing general discovery?

 3    Right now, we'll just say liability discovery, because the

 4    motion to bifurcate is out there.

 5            MR. LONG:  Yes, Your Honor, that's a -- question

 6    here, and I'm not -- but because of -- these are foreign

 7    defendants, and it's not that they'd be -- to jurisdiction

 8    somewhere else.  The position is -- is that they're not

 9    subject to personal jurisdiction in the U.S. at all, so they

10    shouldn't be doing any merits-based discovery.

11            THE COURT:  Is that true, though, of all the

12    defendants in the Sobonito side?

13            MR. LONG:  Yes, sir, so Sobonito hasn't been served

14    yet.  They're --

15            THE COURT:  Right.

16        (Simultaneous conversation)

17            MR. LONG:  --

18            THE COURT:  And we don't know if they'll ever be.

19            But what about the others?

20            MR. LONG:  I.M.L. SLU, have been served.  They're a

21    Andorran entity.  And Coolvision has been served and is an

22    Israeli entity.

23            THE COURT:  Okay.  All right.  So your point is

24    it's not that simple, Judge, because they may never be

25    defendants in any litigation if we're right that there's no

1    jurisdiction over them here.

2              MR. LONG:  Yes, Your Honor.

3              THE COURT:  All right.  Let me just before -- I

4    want to hear what the rest of you have to say.

5              But, Mr. Abramson, how about that?

6              MR. ABRAMSON:  Well, Your Honor, the idea that

7    they're not going to be subject to jurisdiction here, I think

8    is very -- not a very likely possibility.  It is -- they --

9    between the two of them -- and I don't want to get into

10   confidential information unless I need to.  But between the

11   two of them, they own a server in New Jersey, you know,

12   within a short distance of this courthouse, in fact.  It's

13   been accused of infringement in this case.  And -- well,

14   between the two of them -- well, one of them is clearly

15   operating -- operating that server.  So it's -- it's -- we do

16   not see how they're possibly going to avoid jurisdiction.  I

17   think it's just a matter of time before the Court makes its

18   decision.  In our mind, it's very, very clear that there's

19   going to be jurisdiction here.

20             So -- and we have served jurisdictional discovery.

21   It's been going a very slow pace.  We served 20 document

22   requests and 20 interrogatories.  The response to that was a

23   sum total of 79 pages, which we were not satisfied with.  The

24   other side has offered to enter into -- you know, agree to

25   some requests for admission.  But that has been taking, you

1   know, longer, frankly, than we -- than we feel it should.

2   You know, last -- last week, served an amended version of

3   those to accommodate everything that we thought they were

4   saying to us, and we haven't heard anything from them,

5   despite -- you know, despite reminders.

6           So I think this is very much a situation where

7   their object is to get split out of discovery.  And I don't

8   think that that -- you know -- that that's -- that should

9   be -- that should be the result here, especially in light --

10  as Your Honor said, if they're going to be litigating

11  someplace and most likely right here in this district,

12  Mr. Long, has just, you know, addressed the Court, you know,

13  going very much into the merits of this case.  Obviously,

14  he's spent, you know, a good deal of time on it.

15          And, you know, why don't we move forward?  I think

16  we can bring the jurisdictional issue to disclosure fairly

17  quickly, if we get -- either we get the discovery that we

18  requested or we get a set of admissions that we see are

19  satisfactory, and the Court can resolve that issue.

20          But to split that off, I think is going to make

21  this -- this whole situation much more complicated for the

22  Court and for the parties, certainly our side.

23          THE COURT:  Okay.  Mr. Long?

24          MR. LONG:  Yeah, Your Honor, first of all, the -- I

25  mean, we strongly disagree that we've been doing any delay,

```
 1    I'm not going to go into that.  It's not accurate -- we would
 2    certainly give you the schedule of what we've done but --
 3              THE COURT:  Well, we're going to double back to
 4    that, because, obviously, I'm just as responsible, as the
 5    magistrate judge, for the jurisdictional discovery side of
 6    that, as everything else, so we're going to double back to
 7    that just to try and figure out when we can move along and
 8    get a briefing schedule in place so that sooner or later we
 9    can resolve that and know where we stand.
10              But go ahead.
11              MR. LONG:  Yes, Your Honor.  So we've provided them
12    exactly the documents we told them we would give them.
13    They -- disclosed exactly what we told them we would disclose
14    to them.
15              We suggested that rather than going into extensive
16    discovery and depositions, let's just do some -- for example,
17    why provide these documents about all of our revenue,
18    already -- all around the world, when the only thing that's
19    relevant to personal jurisdiction is is their revenue
20    generated out of New Jersey.  How much --
21              THE COURT:  Or -- right or -- or generated through
22    the activities that they specifically direct at New Jersey.
23              MR. LONG:  Yeah, things like that.
24              So we suggested that actually to speed things
25    along -- again, we have an Israeli-based company and an
```

1   Andorran-based company, I thought that was a very reasonable

2   response.

3           We waited over a week or so to get their response

4   to our -- our should be -- Friday, and then I called them

5   today, I thought we could reach agreement.

6           Anyhow, I'm a little miffed by what they've

7   represented here.  But the bottom line is I believe the

8   parties are going to be in a position to tee this up for a

9   motion relatively soon, if we reach agreement on the RFA.

10          THE COURT:  What about this?  Obviously, this has

11  already been briefed.  If the defense is inviting RFAs, has

12  plaintiff considered simply giving their basically -- their

13  version of the facts that was submitted in support of the

14  motion -- or in opposition to the motion to dismiss for

15  defense and saying which of this do you admit and which do

16  you deny?

17          MR. ABRAMSON:  That's essentially what we did.

18          THE COURT:  Well, if they're going to --

19      (Simultaneous conversation)

20          THE COURT:  -- look, if you folks are going to deny

21  everything, Mr. Long, obviously, that just reopens the need

22  for discovery -- underscores the need for discovery.

23          MR. ABRAMSON:  To be fair, last week, I sent

24  Mr. Long, it was an email in which I said, here is a list

25  of -- we had already previously, you know, met and conferred

1   about these -- here's a list of what we think you should be

2   willing to agree to in light of the conversation that we just

3   had and in light of the -- the limited documentation that we

4   have.  And you know what?  If you agree to that, that, I

5   think, could resolve -- could avoid the need for further

6   jurisdictional discovery, and we just go in for a ruling.

7   And that was over a week ago.

8          And I sent that, and we didn't hear anything.  And

9   then I -- you know, I sent two reminders.  And today, you

10  know, in the vestibule of the courtroom, Mr. Long, you know,

11  was -- was -- forthcoming on that to some extent.

12         But, yes, we could do -- we could definitely do

13  that that way, if we reach agreement on those -- on those

14  requests for admissions.

15         If we don't, then we're going to be in a motion to

16  compel to get responses to the -- to the discovery that we

17  served so that we can -- we can independently nail down all

18  those points.

19         THE COURT:  Okay.  So this is what we're going to

20  do, just in the interests of moving along the personal

21  jurisdiction side of discovery, I'm going to require counsel

22  to meet and confer on the approach.  It sounds to me like

23  it's a two-step process.  The first is can we resolve all or

24  part of the need for outstanding personal jurisdictional

25  discovery through requests to admit.  I suspect the answer

1    will be if -- if at all, not entirely, but it may be the case

2    that the requests to admit at least have a significant effect

3    of narrowing down any other outstanding discovery.

4              And then beyond that, a schedule between the

5    parties for completing any remaining personal jurisdiction

6    discovery, because you folks are going to have a better sense

7    of that after you know whether you can reach agreement on the

8    requests to admit.

9              And then -- so basically, meet and confer -- so

10   does Mr. Long have your requests to admit?  It sounds like --

11             MR. ABRAMSON:  Yes, yes he does.

12             THE COURT:  Okay.  So -- to within -- how long do

13   you need to get back to him with a response on those,

14   Mr. Long?

15             MR. LONG:  I think if we had a -- one thing we

16   haven't -- since our client's in Israel -- business days --

17   tomorrow, they don't work on Friday, we do, I think at least

18   by the end of next week, we should be able to have

19   something -- preferably earlier.

20             MR. ABRAMSON:  Your Honor, they've had this for

21   over a week.  I have clients in Israel, and, you know, there

22   is a -- there is a shift, but this does not -- you know, it

23   does not add that much time to the process.  They've had --

24   already had these for a week.  They've had a chance discuss

25   them with their client.  I'm sure they have.

```
 1              THE COURT:  All right.

 2              MR. ABRAMSON:  So --

 3              THE COURT:  I got it.  So by January 29th, the

 4  defense is going to tell the plaintiff specifically -- and

 5  this is something that you folks are going to reduce to an

 6  order as well, a separate order, the defense has until the

 7  29th to tell the plaintiff specifically which requests to

 8  admit they agree on and which they do not agree to or won't

 9  admit.  You folks will then meet and confer to let me know

10  if -- look, obviously, if they can agree to some significant

11  percentage or even maybe certain requests -- may decide we've

12  got what we need.  I don't know I leave that to --

13              MR. ABRAMSON:  We -- we might, yeah --

14       (Simultaneous conversation)

15              THE COURT:  Right.  Which may -- with the issue,

16  then, we're just talking about a briefing schedule.

17              If they don't, though, if either the defendants

18  don't admit to any or enough of the significant ones,

19  requests, and the plaintiff believes it still needs

20  discovery, then I need the parties to meet and confer on what

21  else the plaintiff needs discovery on and a proposed time

22  frame.

23              So I'll give you folks some additional time to do

24  that that.

25              What I want is by January -- sorry, by
```

Hearing
14-cv-02340, January 22, 2016

1   February 8th, a joint letter on what you agree to and the

2   time frame.  And then any remaining discovery disputes

3   between you specific to the personal jurisdiction issue, so

4   I'd like to know what you agree to and the time frame, what

5   you don't agree to, okay, and each side's position on that.

6   And then I'll get you on the phone and we will resolve that,

7   come up with a time frame for that, and therefore a time

8   frame for the briefing on the motion to dismiss.  Okay?  So I

9   think that's probably -- resolves the personal

10  jurisdiction-specific discovery for now.

11              MR. ABRAMSON:  That would be --

12              THE COURT:  Good?

13              MR. ABRAMSON:  -- that would be good, Your Honor.

14  We will follow up with that.

15              THE COURT:  Okay.

16              MR. LONG:  Yes, Your Honor, that does -- one issue,

17  and I think it's in conjunction with what we've talked about

18  with the damages discovery too is that discovery --

19  merits-based discovery should be held in abeyance --

20              THE COURT:  That's a second issue, which I have not

21  resolved by resolving that.  Here's the thing, I need a --

22  we've been going for about an hour and a half, I need five

23  minutes to deal with something in chambers, and then I'll be

24  right back.  So let's just take a 5-, 10-minute break.  All

25  right?

 1          UNIDENTIFIED SPEAKERS:  Yes, Your Honor.

 2          THE COURT:  All right.  Thanks, folks.

 3      (Recess:  12:26 P.M. to 12:40 P.M.)

 4          THE COURT:  We are back on the record in the -- I

 5  keep calling it WAG.  Obviously, it's an acronym.  Is that

 6  accurate?

 7          MR. ABRAMSON:  It is accurate.

 8          THE COURT:  Okay.  In the WAG Acquisition cases.

 9          I think the remaining issue, which Mr. Long had

10  briefly touched on before we took a brief adjournment, was

11  what happens in the Sobonito case to merits discovery and

12  perhaps, depending on how the bifurcation motion later plays

13  out, merits and damages discovery, pending the personal

14  jurisdiction motion.

15          Now, I feel, though, I have a pretty good handle on

16  the issues, but if Mr. Long wishes to be heard, first as to

17  that, I'll be happy to hear if there's anything else that you

18  want to tell me.  And then obviously, Mr. Abramson, and then

19  if there's anybody else who wants to chime in.

20          MR. LONG:  Yes, Your Honor, thank you -- here of

21  course is whether -- who should be the party in this case,

22  who would be subject to U.S. discovery, which is a little bit

23  more burdensome than -- in the world, but -- et cetera, but

24  nonetheless, the issue is whether or not they'd be subject to

25  any U.S. discovery; it's not just an issue of transferring to

1    another district, for example.

2            And that's a very important issue, and it's a

3    threshold issue as to whether any of these foreign defendants

4    would be subject to that discovery.

5            So if we are subject to that discovery, just to

6    have the decision made that we shouldn't have been all along,

7    well, that was a burden we shouldn't have undertaken.

8            Now, when you look at the motion to dismiss that we

9    filed and that Judge Salas ruled on, she had before her the

10   option of granting our motion to dismiss Coolvision and that

11   was the only defendant that had been served and -- or to deny

12   the motion outright or to do what she ended up doing, which

13   is -- is close the issue, and there's to be discovery before

14   we proceed.

15           So it seems to me -- and we cited in the letter to

16   the Court a number of cases but -- and -- which I'm sure

17   Your Honor is familiar with generally -- we shouldn't be

18   subject to the burdens of discovery -- when there's an

19   important issue like this on the table.

20           And that's true, even if one of the defendants ends

21   up remaining in the case.  The issue is who should be subject

22   to discovery.  So it's not enough, as WAG's counsel

23   suggested, that, well, the case may go forward with at least

24   one defendant.  Well, that begs the question, which one?  If

25   there's going to be one defendant, which one of these

1    defendants should be subject to U.S. discovery and which one

2    should not, or maybe it's neither.  So that's a very critical

3    issue that needs to be determined.

4              THE COURT:  What you're saying is among the

5    defendants in the Sobonito case itself.

6              MR. LONG:  Yes, Your Honor.

7              THE COURT:  Right.

8              MR. LONG:  There's three defendants.

9              THE COURT:  Right.

10             MR. LONG:  Coolvision's been served, I.M.L.'s been

11   served, Sobonito has not.  They may not be an ongoing

12   concern, but they're still a named defendant in the case.

13             THE COURT:  Right.

14             MR. LONG:  And that's also been a reason --

15   merits-based discovery -- as well.

16             THE COURT:  Okay.  What else?  Anything else?

17             MR. LONG:  I think -- the last thing I would

18   mention is when the parties had sent letters to the Court

19   earlier on this, I think it was at the time they were in

20   transition with the magistrate judge.

21             THE COURT:  Yes.

22             MR. LONG:  WAG itself had suggested that production

23   could be stayed at least a while and dealt with later.  They

24   just wanted to go ahead and serve the discovery.  And while

25   it appreciate the thought of not having to actually respond

1   to the discovery, it just sets a rather odd situation.   And

2   then the discovery schedule's running along, and the party

3   finds out, well, you're the one that should be in the case or

4   you shouldn't be -- they're just prejudiced by not having

5   been able to do the discovery, if they're required to, all

6   together on a timely basis.

7           THE COURT:   Okay.   Mr. Abramson?

8           MR. ABRAMSON:   Yeah, I guess the first thing I

9   would -- I would note here is that it's our position that we

10  think it's going to be very clear that not just one defendant

11  or the other defendant is going to be in this case in this

12  jurisdiction, but both of them.   And I think there's a

13  reasonable likelihood that that issue can be resolved Daly,

14  Lamastra, Cunningham, Kirmser & Skinner in fairly short

15  order.

16          Now, what impact does that have on the ability to

17  go forward?   It may -- it may at the end of the day not

18  really have any impact, and I think we should -- I think we

19  should abide that event and see how -- see how -- see how it

20  goes before -- before making a decision on that.

21          THE COURT:   All right.   Anything else?

22          MR. ABRAMSON:   Nothing, Your Honor.   Nothing

23  further.

24          THE COURT:   All right.   Fair enough.   I have

25  carefully considered the parties' arguments.   It is well

|Hearing
|14-cv-02340, January 22, 2016

1   established that under Fed. R. Civ. P. 26(c) that the Court

2   may stay discovery only upon a showing of good cause by the

3   party requesting the stay.  See Gerald Chamales Corporation,

4   C-h-a-m-a-l-e-s, v. Oki Data Americas, 247 F.R.D. 453 at 454

5   (D.N.J. December 11, 2007).  See also

6   Fed. R. Civ. P. 26(c)(1), which establishes that a court may

7   issue a protective order with respect to discovery only for

8   good cause.

9        The burden is on the party seeking to stay

10  discovery to show the existence of good cause.  See Perelman

11  v. Perelman, 2011 WL 3330376 at *1 (E.D. Pa. August 3, 2011).

12       Matters -- quote, "Matters of docket control and

13  the conduct of discovery are committed to the sound

14  discretion of this Court."  In re Fine Paper Antitrust

15  Litigation, 685 F.2d 810 at 818 (3d Cir. 1982).  See also

16  Coyle v. Hornell Brewing Company, 2009 WL 1652399 at * 3

17  (D.N.J. June 9, 2009), wherein the District Court said that

18  "in discovery disputes, the magistrate judge exercises broad

19  discretion, is entitled to great deference."

20       Generally in this District, motions to stay

21  discovery are not favored because "when discovery is delayed

22  or prolonged it can cause" -- "it can create," rather, "case

23  management problems which impede the Court's responsibility

24  to expedite discovery and cause unnecessary litigation,

25  expenses and problems."  See Coyle, 2009 WL 1652399 at *3.

1           Whether to stay proceedings requires the Court to

2    weigh competing interests and determine how the balance of

3    hardships with respect to the movant and the nonmovant will

4    ultimately weigh.  See Landis v. North America Corporation,

5    299 U.S. 248 at 254 to 55 (1936).  See also Gold v.

6    Johns-Manville Sales Corporation, 723 F.2d 1068 at 1076 (3d

7    Cir. 1983), wherein the court balanced the potential

8    hardships with respect to both parties.

9           A court must also consider various other factors,

10   including whether the stay would render discovery futile,

11   whether it will have the effect of narrowing discovery, and

12   essentially whether there is merit to the potential

13   dispositive motion for which a stay is sought -- or on which,

14   rather, a motion to stay discovery is predicated.

15          In this case, I find that after carefully

16   considering those factors and weighing the additional

17   factors, that a stay of discovery pending resolution of the

18   personal jurisdiction motion -- and within that, of course,

19   I'm wrapping -- within the personal jurisdiction motion,

20   rather, I'm wrapping into that the personal

21   jurisdiction-targeted discovery, but that a stay of basically

22   merits-based discovery is warranted here.  And I will stay

23   discovery in this one case.

24          I certainly understand the plaintiff's position

25   that it regards the defendant's anticipated motion to dismiss

```
 1    for lack of personal jurisdiction as ultimately not likely to

 2    prevail.  It sounds as though the plaintiff believes it will

 3    be able to articulate that the existence of one or more

 4    servers in the Northern New Jersey area, specifically Newark,

 5    will defeat the defendant and I'm -- obviously, I'm referring

 6    to the Sobonito defendants, if I'm not otherwise clear each

 7    time -- the Sobonito defendants' argument that there is no

 8    specific personal jurisdiction as to them.  And ultimately,

 9    it may be that the plaintiffs prevail.  I'm not really in a

10    position to -- to say.

11          However, I would be remiss if I didn't ignore that

12    Judge Salas in Her Honor's September 10, 2015, opinion, held

13    out that the argument -- or at least held out as possibly

14    prevailing, the argument made by Coolvision that specific

15    jurisdiction does not exist because Coolvision does not

16    direct its activities towards New Jersey and nor do WAG's

17    claims arise out of Coolvision's activities, based in part on

18    the Fogel declaration.

19          Ultimately, Judge Salas allowed that the Sobonito

20    defendants may ultimately prevail, but required -- or found

21    that additional discovery was necessary to determine whether,

22    in fact, the Fogel declaration would controvert WAG's

23    allegations sufficient to defeat the exercise of specific

24    jurisdiction.

25          Therefore, I find that -- I certainly cannot find
```

```
 1    that there is no merit to the anticipated motion.  And that

 2    it's best to -- that there is sufficient merit there to

 3    consider the other factors.

 4           Now, if -- this may very well be a different story

 5    entirely if the case against -- WAG's case against these

 6    defendants was inevitably going to proceed elsewhere in the

 7    United States.  At least based on what I can tell in front of

 8    me, I cannot take that for granted by any stretch.  It sounds

 9    like the WAG defendants -- I'm sorry -- the Sobonito

10    defendants maintain that none of them is a U.S. citizen or a

11    U.S. resident or specifically directs its activities to the

12    United States, and therefore, their argument essentially is

13    that they're not subject to personal jurisdiction anywhere in

14    the United States, including but not limited to New Jersey.

15           Again, I make these observations mindful of the

16    fact that the parties are conducting personal jurisdiction

17    discovery.  It'll be briefed.  I'm sure, in fact, it will be

18    very well briefed, and the ultimate decision remains to be

19    seen.

20           But given those arguments, I cannot overlook them

21    and at least reject out of hand the argument that if they

22    prevail, the Sobonito defendants, they very well may not be

23    subject to suit in the United States.

24           It also may be a different story entirely if I

25    found in weighing the competing prejudices that a stay
```

```
 1   discovery as to Sobonito defendants would set back the
 2   plaintiff's ability to prosecute its theories against the
 3   other defendants or even the Sobonito defendants to a degree
 4   as to cause it significant prejudice or to expound discovery,
 5   either in the Sobonito case or in the other cases to such a
 6   degree that balancing the factors would render it so
 7   inefficient or so costly as to weigh against staying
 8   discovery.
 9           However, I can't reach that conclusion here.  In
10   fact, it very well may be the case that because of some of
11   the commonality of issues in the cases, that these other
12   seven cases, that the discovery that does proceed as to the
13   other -- in the other seven cases, may have the effect of
14   ultimately streamlining the discovery necessary in the
15   Sobonito case, should it proceed here.  For example, a number
16   of those issues, including invalidity, infringement, and
17   claim construction, may already have been developed and
18   narrowed down as a result of the other cases.
19           So for those reasons, I cannot find that the risk
20   of delayed discovery in the Sobonito in and of itself would
21   seriously prejudice either the plaintiff or the efficient
22   administration of justice in the Sobonito case by this Court.
23           And finally, obviously, I'm dealing with a motion
24   to dismiss on which, if the defendant prevails, would have a
25   significant impact on the plaintiff's claims against it and
```

|Hearing
|14-cv-02340, January 22, 2016

1    therefore the ability to take discovery against it.

2          So -- and obviously, as we've talked about before

3    the break, I will be overseeing the personal jurisdiction

4    discovery to the extent that the parties need assistance in

5    working out those issues and in dealing with the briefing

6    schedule, such that Court can control that process to make

7    sure that it doesn't delay or protract unduly.

8          So for those reasons, I'm going to stay merits

9    discovery in the Sobonito case pending the motion to dismiss

10   based on personal jurisdiction.

11         And who knows?  By that point, we may have a clear

12   understanding as to what service on Sobonito itself looks

13   like.

14         All right.  Is there anything else that we need to

15   address today, counsel?

16         Let me start with Mr. Abramson.

17         MR. ABRAMSON:  Nothing further, Your Honor.

18         THE COURT:  All right.  Any of the other

19   defendants?

20         MR. DENGLER:  Your Honor, I think the parties

21   failed to just confirm with Your Honor that we'll meet and

22   confer, prepare the proposed discovery order, and submit it

23   to Your Honor by January 29th, next Friday?

24         THE COURT:  Perfect.

25         MR. DENGLER:  Thank you.

1           THE COURT:  All right.  Anything else?  No?  We are

2   adjourned.  Thank you, counsel.

3           UNIDENTIFIED SPEAKERS:  Thank you, Your Honor.

4           THE COURT:  Have a great weekend.  Get home safe.

5           MR. DENGLER:  You too, Your Honor.

6           (Conclusion of proceedings at 12:56 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
|Hearing
|14-cv-02340, January 22, 2016
Certification
```

1                                       Certification

2              I, SARA L. KERN, Transcriptionist, do hereby certify

3      that the 69 pages contained herein constitute a full, true,

4      and accurate transcript from the official electronic

5      recording of the proceedings had in the above-entitled

6      matter; that research was performed on the spelling of proper

7      names and utilizing the information provided, but that in

8      many cases the spellings were educated guesses; that the

9      transcript was prepared by me or under my direction and was

10     done to the best of my skill and ability.

11             I further certify that I am in no way related to any of

12     the parties hereto nor am I in any way interested in the

13     outcome hereof.

14

15

16

17

18     S/ *Sara L. Kern*                  3rd of February, 2016

19     _____           _____
       Signature of Approved Transcriber              Date

20

21
       Sara L. Kern, CET**D-338
22     King Transcription Services
       3 South Corporate Drive, Suite 203
23     Riverdale, NJ  07457
       (973) 237-6080
24

25