**Lewis | Baach pllc**
**Kaufmann Middlemiss**
THE NEW YORK OFFICE OF LEWIS BAACH PLLC

May 23, 2016

**VIA ECF**

The Honorable Michael A. Hammer, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re:   <u>*WAG Acquisition L.L.C. v. Sobonito Investments, Ltd., et al.* **(14-cv-01661)**</u>

Dear Judge Hammer:

This is a joint letter from counsel in the above-captioned case, on behalf of Plaintiff WAG Acquisition, L.L.C. ("WAG") and Defendants I.M.L. SLU ("IML") and Coolvision Ltd. ("Coolvision"). We write jointly, to set forth the parties' respective positions with regard to completing jurisdictional discovery.

<u>Plaintiff's Position</u>

This action concerns U.S. patent infringement alleged to arise out of the operation of a web site known as "imlive.com." Defendants IML and Coolvision have contested personal jurisdiction over them in this district in this action. On September 10, 2015, in initially denying Defendants' motion to dismiss, the Court ordered limited jurisdictional discovery to resolve the issue of personal jurisdiction with regard to Coolvision. Defendant IML appeared later, and was added to the jurisdictional discovery.

In October and November of 2015, WAG served interrogatories and document requests on the Defendants. The response to these requests consisted of three heavily redacted documents and corresponding interrogatory answers. The documents comprised two asset purchase agreements concerning the web sites accused of infringement in this case, by which IML obtained ownership of those web sites, and one "Operating Agreement" for administration and operation of the web sites by Coolvision. WAG stated that this production was considerably short of what had been requested and was unsatisfactory.

Defendants offered to negotiate written admissions in lieu of further jurisdictional discovery. While these admissions resulted in some progress, WAG believes there remains one gap to be filled, concerning the meaning of terms in the Operating Agreement, which appear to be disputed with regard to the extent of Coolvision's responsibility for the subject web sites. WAG believes this discovery can be wrapped up by a Rule 30(b)(6) deposition of Coolvision, focusing on the scope and substance of its operational and administrative roles under the

Operating Agreement, and limited production of any documents by which Coolvision may claim to have delegated any operational duties to one or more third parties. Since the deposition would involve foreign travel and a limited document production in advance, WAG believes this can be completed within 30 days after being ordered.

WAG has alleged a number of facts that tie IML and Coolvision to activities in New Jersey[1] that give rise to the alleged infringement, and Defendants have made a number of admissions with respect thereto.

In short, during the relevant time period:

- IML admits that it owns, controls, and financially benefits from a number of the accused infringing web sites, including without limitation imlive.com.
- IML and Coolvision admit that the site imlive.com uses at least one computer ("server") in New Jersey to stream its content.
- WAG has observed, and IML and Coolvision have "proposed" to admit, that imlive.com had individuals in New Jersey register on the site, both as performers ("Hosts") and end users.
- WAG has observed an imlive.com server located in New Jersey serving to end users a computer program file specifically accused of infringement in the Second Amended Complaint herein.
- Coolvision admits that during the relevant period, pursuant to a certain "Operating Agreement," it has been "responsible for *all . . . operational and administrative aspects*" of a number of IML web sites, specifically including (without limitation) the imlive.com web site.

WAG believes these facts and admissions are conclusive as to jurisdiction over at least IML.

Coolvision, on the other hand, disputes its involvement in any alleged infringement taking place on the imlive.com web site. Despite Coolvision's admission of having *generally* had responsibility for "all operational and administrative aspects" of imlive.com, it nevertheless denies responsibility for any alleged infringing elements that have been found on that site.

---

[1] WAG believes that Defendants' New Jersey contacts are sufficient to establish personal jurisdiction under Fed. R. Civ. P. 4(k)(1). However, WAG has asserted all along that that jurisdiction also lies under Fed. R. Civ. P. 4(k)(2), under which personal jurisdiction over actions such as this one, arising under federal statutes, are evaluated based on *nationwide* contacts. Defendants have similar contacts in Virginia and New York to those discussed herein with regard to New Jersey, which are also cognizable under Rule 4(k)(2).



Coolvision has refused to disclose, however, who it contends *is* responsible for the alleged infringing programming, or how anyone else managed to put an infringing mechanism on a site over which Coolvision has administrative and operation control, without Coolvision's involvement or responsibility.

In response to WAG's limited jurisdictional document requests, Coolvision and IML have produced a sum total of three (3) heavily redacted documents (consisting of two asset purchase agreements and the Operating Agreement), and offered the limited admissions summarized above. Coolvision and IML have objected to any further discovery or stipulations.

In view of the unresolved issues of the scope of Coolvision's operation and administration of imlive.com, and how, notwithstanding Coolvision's general responsibility, Coolvision might *not* be responsible for computer programming placed on that site, WAG has requested a Rule 30(b)(6) deposition, in order to clarify those issues. Coolvision and IML have refused this request.

WAG thus has the following problem. While Coolvision has made general admissions, it has denied specific facts material to jurisdiction that might appear to have been within the scope of what it has generally admitted. In a renewed jurisdictional motion, Coolvision will therefore still be free to make fact-specific arguments as to its alleged non-responsibility for infringing programming on the imlive.com website. Faced with any fact-specific argument in such a motion, and having had no opportunity to probe the facts concerning Coolvision's and/or any third party's actual role in operating and administering imlive.com, WAG will be in the dark and unable to counter Coolvision's factual assertions. WAG respectfully submits that this is not what Judge Salas intended when she ordered limited jurisdictional discovery.

Accordingly, WAG seeks an order for a Rule 30(b)(6) deposition of Coolvision relating to Coolvision's specific responsibilities, per the Operating Agreement, for all "operational and maintenance aspects" of IML's web sites operating in the U.S.

The topics for the Rule 30(b)(6) deposition would be:

(1) A description of the "operational and maintenance" services that Coolvision is responsible for under the Operating Agreement, who performs such services, under what arrangements, during the relevant period, and who controls administrative and maintenance access to the specified web sites such as would permit programs and/or files to be installed thereon, under what provisions and arrangements.

(2) Any agreements that in any way modified or limited the scope of the duties assigned to Coolvision under the Operating Agreement.



WAG further requests that at least ten working days prior to the deposition that Coolvision produce documents sufficient to establish the substance of any agreement referred to in the preceding paragraph (2).

WAG is amenable to conducting this deposition in Israel, should Coolvision so desire, provided that the deposition is conducted under the U.S. Federal Rules of Civil Procedure.

Defendants IML and Coolvision's Position

WAG's unreasonable demand for a foreign deposition of Coolvision should be denied. WAG misstates the scope and content of IML's and Coolvision's past admissions[2], complains about documents without establishing that more responsive documents exist or are needed, and rewrites the history of jurisdictional discovery – all in furtherance of a deposition which is unneeded.

*Brief Background of Status of Personal Jurisdiction Discovery*

The Court will recall that the parties have been negotiating for some time to agree on a set of responses to requests for admission that would obviate the need for other discovery to resolve the question of personal jurisdiction over the foreign defendants. (IML is an Andorran company and Coolvision is Israeli). At the last telephonic conference on the topic, the Court ruled that discovery could not be taken into topics which defendants had admitted. (3/09/16 transcript at 41-42). The practice followed by the parties has been for WAG to propose admissions that it believes it needs to make its case that jurisdiction exists, and for defendants to counter with the admissions that they are able to make, based on the facts. Since the last teleconference with the Court, the parties have followed this practice – with one twist. Every time defendants respond to WAG's requests with their proposed admissions, WAG has added an additional topic to the discussion. Notably, in these exchanges over the past 4 months, WAG has never raised concerns with defendants' document production or other responses to its written discovery demands.

Defendants believe that they already have provided WAG the information it has requested and asserts that it needs to support its claim for personal jurisdiction. WAG agrees. In an email dated April 7 to defense counsel, WAG summarized the admissions and stated that "the foregoing is sufficiently compelling in our view that we doubt we will need to proceed with

---

[2] WAG sets forth five bullet points at page 2 of its portion of this joint letter purporting to list facts admitted by IML and/or Coolvision. These bullet points are plaintiff's summaries of a subset of defendants' actual admissions and proposed admissions, made for the purposes of determining personal jurisdiction only and in the hopes of streamlining the process by avoiding additional discovery. The actual admissions and proposed admissions speak for themselves.

either the third-party subpoenas or other pending discovery requests with regard to jurisdiction." WAG repeats its position that it has the discovery it needs to make its jurisdictional argument in footnote 1 to this letter.

Nevertheless, following its emailed indication that nothing more was needed, WAG added two additional topics concerning registered users and hosts as the remaining "*additional limited jurisdictional discovery*" (WAG's emphasis) that it said it needed. Defendants provided a proposed admission satisfying these topical inquiries, which apparently was satisfactory to WAG because it is not mentioned in this letter.

Notwithstanding, on the heels of getting what it requested, WAG issued an ultimatum on a completely new topic, demanding for the first time that Coolvision either admit not a fact but a legal conclusion (*i.e.*, Coolvision's "responsibility" for a software file that WAG's counsel apparently downloaded), or submit to a wide-ranging 30(b)(6) deposition on its activities under the Operating Agreement for all of IML's web sites (the deposition WAG is asking this Court to order). The impropriety of WAG's ultimatum is compounded by a last minute edit to this letter asserting for the first time that "WAG believes there remains one gap to be filled, concerning the meaning of terms in the Operating Agreement, which appear to be disputed with regard to the extent of Coolvision's responsibility for the subject web sites." (Above at page 1). At no point, including in this letter, has WAG identified any "terms" in the Operating Agreement which are "disputed."

*The Requested Deposition Is Unwarranted*

WAG has stated repeatedly that it does not need further discovery, much less a deposition, to support its claim that this Court can exercise personal jurisdiction over Coolvision. It concedes that defendants have produced to it copies of the Operating Agreement that governs and defines Coolvision's role. WAG argues that Coolvision has admitted that it "generally had responsibility for 'all operational and administrative aspects' of imlive.com"[3]. WAG's argument is that since Coolvision will not admit infringement ("Coolvision, on the other hand, disputes its involvement in any alleged infringement taking place …", above at page 2), it should be permitted to take a deposition.

WAG has not pointed to any specific fact, however, which it needs the deposition to uncover. Instead, it speculates that Coolvision might assert some unspecified fact that WAG might not be able to counter. In other words, WAG seeks the deposition to fish around for what it might find, going so far as to invent a need to inquire into "any agreements that in any way

---

[3] The actual language of defendants' admission will govern, of course, but the point is that WAG concedes that it has the information concerning Coolvision's operational and administrative connection to imlive.com that it has requested and that it wanted for its jurisdictional argument.



modified or limited the scope of duties assigned to Coolvision under the Operating Agreement," (above at page 3, second indented numbered paragraph), although defendants have not claimed that Coolvision's duties have been modified or limited.

Overreaching still further, WAG also seeks the deposition to inquire into "the operational and maintenance services that Coolvision is responsible for under the Operating Agreement," and in particular who performed what services, (above at page 3, first indented numbered paragraph), although it has the agreement itself and defendant's acknowledgement of that agreement.

WAG has not – until this letter to the Court – even suggested that the definition of terms in the Operating Agreement need explication and has not asked for further information about Coolvision's activities pursuant to that agreement.  Nor has WAG explained, even now, the relevance of these additional broad-ranging inquiries to the question of personal jurisdiction. Instead, WAG incorrectly complains that while "Coolvision has made general admissions, it has denied specific facts material to jurisdiction that might appear to have been within the scope of what it has generally admitted."  (Above at page 2).  WAG does not, however, identify any "specific fact" that Coolvision has denied, nor any "specific fact" that it needs to establish personal jurisdiction.

WAG's intent to use the threat of deposition to cow defendants into conceding conclusions is further revealed by the fact that it is seeking discovery not only into Coolvision's activities, but also to identify "who [Coolvision] contends is responsible for the alleged infringing programming" (above at page 3), although it does not explain how this is relevant to a question of whether Coolvision's activities are sufficient for jurisdiction over Coolvision.  WAG has not argued that it is seeking discovery in order to identify appropriate parties.  If it is seeking pre-pleading discovery, it should be clear about its objectives and explain how they are justified under the applicable rules and law.

There is no need or reason to order a deposition of a foreign party based on speculation that defendants may make factual assertions in an upcoming motion that WAG might not be prepared to answer.  At best, WAG's request for discovery is premature.  If and when defendants bring up unanticipated and currently unknown facts, then WAG might be in a position to seek appropriate discovery so that it can respond.

Indeed, it was defendants' understanding that the negotiations between the parties was for the purpose of establishing the record on which the personal jurisdiction motions would be based.  Defendants are willing to state this formally, and to agree that the jursidictional dispute will be resolved based on the existing discovery – which includes the documents produced by defendants and the series of admissions which defendants have made in response to plaintiff's requests.



   WAG's failure to explain the need (as opposed to speculation) for any deposition, much less one outside of the United States, reveals its request for what it is – an attempt to inconvenience defendants and hunt for random information it hopes may eventually help its case. IML and Coolvision respectfully request that WAG's request for a deposition be denied.

* * * * *

   The parties are available in person or by telephone to discuss this request with the Court.

                Respectfully,

                Ronald Abramson

cc: Counsel of Record (via ECF)